No. 16-40701
Consolidated with: No. 16-40702

————————————————

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

UNITED STATES OF AMERICA,
Plaintiff-Appellee,
v.

WILLIAM CHANCE WALLACE
Defendant-Appellant

————————————————

On Appeal from the United States District Court
for the Southern District of Texas,
Victoria Division, Criminal Nos. 6:15-CR-00030-1 & 6:15-CR-00057-1

————————————————

BRIEF OF PLAINTIFF-APPELLEE

————————————————

KENNETH MAGIDSON
United States Attorney

RENATA A. GOWIE
Chief, Appellate Division

LAURETTA DRAKE BAHRY
Assistant United States Attorney
United States Attorney's Office
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102
ATTORNEYS FOR APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

The United States agrees with Wallace that oral argument is unnecessary in this case (Appellant's Brief, iii). The facts and legal arguments are adequately presented in the briefs and record; oral argument would not significantly aid the decisional process. *See* Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT......................................i

TABLE OF AUTHORITIES........................................................v

STATEMENT OF JURISDICTION............................................2

STATEMENT OF THE ISSUES................................................2

STATEMENT OF THE CASE ..................................................3

    I.    Course of Proceedings and Disposition Below.......................3

    II.    Statement of Facts .................................................5

          1.    Amended Motion to Suppress ........................5

          2.    Suppression Hearing Testimony.....................6

          3.    Memorandum Opinion & Order....................14

SUMMARY OF THE ARGUMENT.........................................14

ARGUMENT...........................................................................16

I.    The United States invokes the appeal waiver provision in the Wallace's written plea agreement in Appeal No. 16-40702. This appeal should be dismissed (responsive to Wallace's Issue Three)..............................................................................16

II.    The district court properly denied Wallace's suppression motion because the applications for cellular location data established an "ongoing criminal investigation" under relevant federal and state authority (responsive to Wallace's Issue One)..............................................................................19

# TABLE OF CONTENTS, cont'd

**PAGE**

    1.    Standard of Review ...............................................................19

    2.    The Ping Order complied with federal and state law ..........20

        A.    Relevant Statutes ........................................................20

        B.    No Violation of Federal or State Statutes ...................22

        C.    Even Assuming Arguendo that a Violation of the SCA Exists, Suppression is not an available Remedy. ........................................................................30

III.   Law enforcement relied in good faith upon valid court orders authorizing the use of prospective cellular site location information under 18 U.S.C. § 2703(d) of the Stored Communications Act. No Fourth Amendment violation exists (responsive to Wallace's Issue Two). ..............................................32

    1.    Standard of Review ...............................................................32

    2.    Fourth Amendment Jurisprudence .......................................33

        A.    Historical CSLI under 18 U.S.C. § 2703(d) .................34

        B.    Prospective CSLI under 18 U.S.C. § 2703(d)...............36

            1.    Good Faith Exception .........................................37

            2.    No Fourth Amendment "Search" exists in the use of Prospective CSLI.......................................43

CONCLUSION ...........................................................................49

CERTIFICATE OF SERVICE..................................................50

## TABLE OF CONTENTS, cont'd

### PAGE

CERTIFICATE OF COMPLIANCE .......................................................51

# **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Amilpas v. State*, 2015 WL 1869458, (Tex. App. - Houston [1st Dist.]
     Apr. 23, 2015) (unpublished) ...................................................26, 27

*Davis v. United States*, 564 U.S. 229 (2011)...........................................33

*Illinois v. Krull*, 480 U.S. 340 (1987) .......................................................33

*In re Application for an Order Authorizing the Installation and Use*
     *of a Pen Register & Directing the Disclosure of*
     *Telecommunications Records for Cellular Phones assigned the*
     *No. Sealed,* 439 F. Supp. 2d 456 (D. Md. 2006) .......................27, 28

*In re Application of U.S. for an Order: (1) Authorizing Use of a Pen*
     *Register & Trap & Trace Device; (2) Authorizing Release of*
     *Subscriber & Other Info.; & (3) Authorizing Disclosure of*
     *Location-Based Servs.,* 727 F. Supp. 2d 571
     (W.D. Tex. 2010) .....................................................................25, 26

*In re Application of U.S. for an Order Directing a Provider of Elec.*
     *Commc'n Serv. to Disclose Records to Gov't,*
     620 F.3d 304 (3rd Cir. 2010) ..........................................................36

*In re Application of the U.S. for an Order for Prospective Cell Site*
     *Location Information on a Certain Cellular Telephone,*
     460 F. Supp. 2d 448 (S.D.N.Y. 2006) ..............................................39

*In re Application of the U.S. for an Order for Authorization to Obtain*
     *Location Data Concerning an AT&T Cellular Telephone,*
     102 F. Supp. 3d 884 (N.D. Miss. 2015)...........................................45

*In re Smartphone Geolocation Data Application,*
     977 F. Supp. 2d 129 (E.D.N.Y. 2013).....................................*passim*

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                                                        **Page(s)**

*In re U.S. for Historical Cell Site Data,*
    724 F.3d 600 (5th Cir. 2013) ................................................... *passim*

*Katz v. United States*, 389 U.S. 347 (1967) ............................................. 34

*Mapp v. Ohio*, 367 U.S. 643 (1961) ......................................................... 33

*Payton v. N.Y.*, 445 U.S. 573 (1980) .................................................. 24, 48

*Richardson v. Henry*, 902 F.2d 414 (5th Cir. 1990) ............................... 18

*Smith v. Maryland*, 442 U.S. 735 (1979) ................................................ 33

*Steagald v. United States*, 451 U.S. 204 (1981) ..................................... 47

*United States v. Allen*, 625 F.3d 830 (5th Cir. 2010) ....................... 37, 43

*United States v. Bermudez*, 2006 WL 3197181 (S.D. Ind. Jun. 30,
    2006), *aff'd sub nom., United States v. Amaral-Estrada,*
    509 F.3d 820 (7th Cir. 2007) (unpublished) ............................ 24, 26

*United States v. Booker*, 2013 WL 2903562 (N.D. Ga. June 13, 2013)
    (unpublished) .................................................................................. 40

*United States v. Caraballo,* 831 F.3d 95, 99 (2d Cir.), *pet. for cert.
    filed,* No.16-6641 (Oct. 26, 2016) .................................................... 34

*United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016) ............... 31, 36

*United States v. Clenney*, 631 F.3d 658 (4th Cir. 2011) ......................... 31

*United States v. Craig*, 861 F.2d 818 (5th Cir. 1988) ............................. 37

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                              **Page(s)**

*United States v. Davis*, 785 F.3d 498 (11th Cir.), *cert. denied,*
    136 S. Ct. 479 (2015) (en banc) ....................................................... 36

*United States v. Espudo*, 954 F. Supp. 2d 1029 (S.D. Cal. 2013) ... *passim*

*United States v. Ferguson*, 508 F. Supp. 2d 7 (D.D.C. 2007) ............ 41, 42

*United States v. Giddins*, 57 F. Supp. 3d 481 (D. Md. 2014) .................. 45

*United States v. Graham*, 824 F.3d 421 (4th Cir. 2016) (en banc) ......... 36

*United States v. Guerrero*, 768 F.3d 351 (5th Cir. 2014) ............... *passim*

*United States v. Jacobs*, 635 F.3d 778 (5th Cir. 2011) ............................ 19

*United States v. Johnson*, 619 F.3d 469 (5th Cir. 2010) ........................ 18

*United States v. Jones*, 132 S. Ct. 945 (2012) .................................... 26, 44

*United States v. Jones*, 908 F. Supp. 2d 203 (D.D.C. 2012) ............ *passim*

*United States v. Koch*, 625 F.3d 470 (8th Cir. 2010) ............................... 37

*United States v. Leon*, 468 U.S. 897 (1984) ................................. 33, 40, 42

*United States v. Melancon*, 972 F.2d 566 (5th Cir. 1992) ................. 18, 19

*United States v. Muniz*, 2013 WL 391161 (S.D. Tex. Jan. 29, 2013)
    (unpublished) ................................................................................. 42

*United States v. Pembrook*, 119 F. Supp. 3d 577
    (E.D. Mich. 2015) ............................................................... 40, 41, 42

*United States v. Perrine*, 518 F.3d 1196 (10th Cir. 2008) ...................... 31

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                    **Page(s)**

*United States v. Powell*, 444 F. App'x 517 (3rd Cir. 2011)
    (unpublished) ................................................................. 31

*United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012) ......................... 43

*United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998) .......................... 31

*United States v. Stalnaker*, 571 F.3d 428 (5th Cir. 2009) ...................... 41

*United States v. Turner*, 839 F.3d 429 (5th Cir. 2016) ......... 20, 31, 32, 48

*United States v. Villarreal*, 650 F. App'x 200 (5th Cir. 2016)
    (unpublished) ................................................................. 18

*United States v. Watson*, 423 U.S. 411 (1976) ......................................... 38

## Statutes and Rules

18 U.S.C. § 846 .......................................................................................... 46

18 U.S.C. § 922(g)(1) ................................................................................... 3

18 U.S.C. § 924(a)(2) .................................................................................... 3

18 U.S.C. § 924(e) ........................................................................................ 3

18 U.S.C. § 1513(b)(2) .................................................................................. 4

18 U.S.C. § 2701 ......................................................................................... 21

18 U.S.C. § 2703(c) ..................................................................................... 39

18 U.S.C. § 2703(c)(1) ................................................................................ 38

## TABLE OF AUTHORITIES, cont'd

**Statutes and Rules**                                        **Page(s)**

18 U.S.C. § 2703(c)(2) ................................................................... 11

18 U.S.C. § 2703(c)(1)(A) ........................................................ *passim*

18 U.S.C. § 2703(c)(1)(B) ..................................................... 11, 21

18 U.S.C. § 2703(d) .................................................................. *passim*

18 U.S.C. § 3122.................................................................... 7, 46

18 U.S.C. § 3122(b)(2).................................................................. 5

18 U.S.C. § 3123........................................................................ 46

18 U.S.C. § 3123(a)(2).......................................... 15, 19, 21, 26

18 U.S.C. § 3127(3) ..................................................................... 7

18 U.S.C. § 3127(4) ..................................................................... 7

18 U.S.C. § 3231........................................................................... 2

18 U.S.C. § 3742(a) ...................................................................... 2

28 U.S.C. § 1291........................................................................... 2

5th Cir. R. 47.5.4..................................................................... 18

Fed. R. App. P. 4(b)(2) .............................................................. 2

Fed. R. App. P. 10(b)................................................................. 18

Fed. R. App. P. 34(a)(2)(C) ......................................................... i

## TABLE OF AUTHORITIES, cont'd

**Statutes and Rules**                                    **Page(s)**

Fed. R. Crim. P. 41 ....................................................................21

Tex. Code Crim. P. 18.21..........................................5, 15, 19, 26

Tex. Code Crim. P. Art. 18.21 § 2(b) ....................................7, 11

Tex. Code Crim. P. Art. 18.21 § 2(c) ........................................11

Tex. Code Crim. P. Art. 18.21 § 5(a) ..........................................7

Tex. Code Crim. P. Ann. Art. 18.21 § 14(a)(1) (West 2015) ....................22

Tex. Code Crim. P. Ann. Art. 18.21 § 14(c) (West 2015).........................22

## Other Authorities

U.S. Const. amend. IV..............................................................33

Electronic Communications Privacy Act of 1986 ("ECPA")
    Pub. L. No.99-508 (HR 4952), 100 Stat 1848 (1986)......................20

x

No. 16-40701
Consolidated with: 16-40702

————————————————

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

UNITED STATES OF AMERICA,
                                        Plaintiff-Appellee,
v.

WILLIAM CHANCE WALLACE,
                                        Defendant-Appellant

————————————

On Appeal from the United States District Court
for the Southern District of Texas,
Victoria Division, Criminal Nos. 6:15-CR-00030-1 & 6:15-CR-00057-1

————————————

BRIEF OF PLAINTIFF-APPELLEE

————————————————

The United States of America, Plaintiff-Appellee, by and through

the United States Attorney for the Southern District of Texas, files this

brief in response to that of Defendant-Appellant William Chance

Wallace.

## STATEMENT OF JURISDICTION

This is a consolidated appeal from the judgments and sentences of conviction imposed by the district court (Rainey, J.) on May 3, 2016, and entered on May 20, 2016 (ROA.16-40701.10, 128; ROA.16-40702.6, 30).[1] The district court had jurisdiction under 18 U.S.C. § 3231.  Wallace filed timely notices of appeal on May 17, 2016, under Fed. R. App. P. 4(b)(2) (ROA.16-40701.10, 127; ROA.16-40702.6, 29).  This Court's jurisdiction vests under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

(1)     Whether the waiver-of-appeal provision in Wallace's written plea agreement in District Court Case No. 6:15-CR-00057-1 bars his appeal in Appeal No. 16-40702 (responsive to Wallace's Issue Three).

(2)     Whether the district court properly denied Wallace's suppression motion where the applications for cellular location data established an "ongoing criminal investigation" under federal and state authority (responsive to Wallace's Issue One).

---

[1] "ROA" refers to the record on appeal in Appeal No. 16-40701 and Appeal No. 16-40702, followed by the page number.

(3)     Whether law enforcement's good-faith reliance upon valid court orders pretermits any Fourth Amendment analysis into the constitutionality of prospective cellular site information under 18 U.S.C. § 2703(d) of the Stored Communications Act (responsive to Wallace's Issue Two).

## STATEMENT OF THE CASE

I.     <u>Course of Proceedings and Disposition Below</u>

On December 30, 2015, a second superseding indictment charged Wallace with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924 (a)(2), (e) (hereinafter, "the firearm case") (ROA.16-40701.28-29, 40-41, 106-08).  Under the terms of a written plea agreement in District Court Case No. 6:15-00030-1, Appeal No. 16-40701, Wallace pleaded guilty (ROA.16-40701.106-08, 121-25).  Wallace reserved the right to appeal the district court's ruling on his amended motion to suppress, the subject of Appeal No. 16-40701 before this Court (ROA.16-40701.123).

 On December 30, 2015, a different federal indictment charged Wallace, and two co-defendants, with aiding and abetting retaliation against a witness in a criminal investigation, by "posting a picture of a

criminal complaint [in the firearm case] and naming an individual as a "snitch;" thereby causing threats of violence to be made against the said individual" (hereinafter, "the retaliation case") (ROA.16-40702.14). Under the terms of a written plea agreement in District Court Case No. 6:15-CR-00057-1, Appeal No. 16-40702, Wallace pleaded guilty to aiding and abetting retaliation against a witness in a federal investigation in violation of 18 U.S.C. § 1513(b)(2) (ROA.16-40702.14, 23-27). Wallace waived his right to appeal his conviction and sentence, with the exception of a claim of ineffective assistance of counsel (not raised here) (ROA.16-40702.23-27). The United States invokes this waiver provision, which is addressed in Issue I of this brief.

The cases were consolidated at sentencing and the district court sentenced Wallace in both cases to 180 months of imprisonment, with both sentences to run concurrently with each other, to be followed by three-year terms of supervised release with both sentences also running concurrently with each other (ROA.16-40701.129-30; 16-40702.31-32).

II.    Statement of Facts

1.    **Amended Motion to Suppress**

In the firearm case, Wallace filed an amended motion to suppress evidence of firearms, ammunition, and any other testimony or relevant information obtained during the May 12, 2015, execution of an outstanding January 15, 2015, arrest warrant in Victoria County, Texas (ROA.16-40701.83-92, 263). [2]

In his amended suppression motion, Wallace argued that law enforcement obtained a "Ping Order" to aid in the execution of the arrest warrant, in violation of the Stored Communications Act ("SCA") of 18 U.S.C. § 2703(d), the Pen/Trap Statute of 18 U.S.C. § 3122(b)(2), and Tex. Code Crim. P. Ann. Art. 18.21 (West 2015) (ROA.87-88, 103-104). He asserted that the Ping Order, which gave law enforcement precise location information for his cellphone, was invalid because: "(1) the information provided to the State Judge was ambiguous, overbroad and conclusory and (2) law enforcement was not engaged in an 'ongoing criminal investigation' of the Defendant" (ROA.87-88, 103-104). He also

---

[2] Hereinafter, the appellate record will be cited next to the ("ROA.") number in Appeal No. 16-40701, unless otherwise noted.

challenged the constitutionality of the SCA and the Texas statute under the Fourth and Fourteenth Amendments (ROA.89-90, 99-103).

The United States filed a response opposing the motion (ROA.93-97) and the district court conducted an evidentiary hearing.

## 2.     Suppression Hearing Testimony

Shawn Hallett, a Special Agent with the Texas Department of Public Safety ("DPS") in Victoria, Texas, received information about Wallace from a confidential informant (ROA.164-65). The informant had worked with Agent Hallett for several months and had brought the agent information related to over eight cases, resulting in numerous indictments (ROA.181-82). The informant advised Agent Hallett that Wallace was a Puro Tango Blast gang member and a wanted fugitive (ROA.165). He gave Wallace's phone number to Agent Hallett and believed that Wallace was in Austin (ROA.165). The number had an Austin area code (ROA.167).

Agent Hallett searched law enforcement computer databases and discovered that an outstanding arrest warrant dated January 15, 2015, from Victoria County, Texas, existed for Wallace for manufacture and delivery of a controlled substance (ROA.166, 201-02, 263). Agent Hallett

6

later learned that the outstanding warrant was for a probation violation (ROA.178).  Nevertheless, he averred that the arrest warrant was valid and Wallace was considered a fugitive from justice under Texas law (ROA.224).

Agent Hallett began an investigation to apprehend Wallace, a wanted fugitive, and contacted the gang unit at the DPS office in Austin, Texas (ROA.167).  A state prosecutor filed an application for the Ping Order on May 6, 2015, seeking authorization under Tex. Code Crim. P. Art. 18.21 §§ 2(b) & 5(a) and 18 U.S.C. §§ 2703(d) and 3122 for: (1) the installation and use of a trap and trace device and a conditional pen register;[3] (2) release of customer records and other information

---

[3] A "pen register" refers to "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device or process used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business."  18 U.S.C. § 3127(3).

A "trap and trace device" refers to "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information shall not include the contents of any communications."  18 U.S.C. § 3127(4).

pertaining to a mobile communications device; and (3) the disclosure of precision-location/"E-911" records (ROA.323-28).[4] The stated purpose for the Ping Order was "to locate the communications device in aid of apprehension of a felony fugitive or to locate a felony suspect and collect evidence.  This requested order is relevant to an ongoing criminal investigation based on probable cause." (ROA.323).  The state prosecutor gave the following certification in the application:

> Applicant believes and certifies that (i) the Investigative Agency identified on the attached affidavit is conducting a criminal investigation concerning the Offense(s) identified therein; (ii) the information likely to be obtained from the trap and trace device and/or conditional pen register is relevant to that investigation; and (iii) the specific and articulated facts contained in this Application and Affidavit establish reasonable grounds to believe that the stored and transactional records and information sough are relevant and material to that investigation; and (iv) those same facts establish the probable cause necessary to obtain all information, including E911 location-based measurements, that are necessary to ascertain the mobile communication device's location . . .

(ROA.324).

An affidavit from DPS Special Agent Jose Rodriguez was attached to the application, which provided in relevant part:

---

[4] "E-911" data refers to real-time, precise location data obtained through global positioning satellites (GPS).

Texas Department of Public Safety, Criminal Investigations Division, Gang Unit are attempting to locate a violent fugitive felon as defined by the Texas Penal Code, Chapter 38.01; William Chance WALLACE.

WALLACE is a confirmed Puro Tango Blast (PTB) gang member through the TXGANG database. TXGANG utilizes the criteria's [sic] set forth by the legislature in the Texas Code of Criminal Procedure (CCP) Chapter 61, for identifying, compiling and sharing information related to gang activity, gang membership and gang trends. Furthermore, Texas Penal Code Chapter 71 defines a Criminal Street Gang as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activity."

According to the *Texas Gang Threat Assessment of 2014,* PTB has approximately more than 8,200 cohorts in Texas. According to the *Texas Gang Threat assessment of 2014,* PTB is considered a Tier 1 gang. Tier 1 gangs are categorized by their relationship to cartels, transnational criminal activity, level of criminal activity, prevalence in Texas, and strength, among others. Other Tier 1 gangs are Texas Syndicate, Mexican Mafia, and Barrio Azteca. The categories that place PTB as a Tier 1 gang are very significant since having international criminal relationships with cartels represents a very significant threat to Texas. This threat comes in the form of the import and export of drugs, guns, car and even humans such as human smuggling or human trafficking.

WALLACE currently has an active warrant for unlawful delivery of a controlled substance in PG1, 4 grams to 200 grams, Warrant number #12-8-26813-D. WALLACE has an extensive criminal history to include, but not limited to the following: Aggravated assault with a deadly weapon, burglary of a habitation, possession of marijuana, delivery of marijuana, manufacturer [sic] or delivery of a controlled substance in PG-1 more than 4 grams but less than 200 grams

Case: 16-40701    Document: 00513771305    Page: 21    Date Filed: 11/23/2016

and evading arrest or detention.  WALLACE is currently considered armed and dangerous in part because of his membership to the Puro Tango Blast (PTB) gang and his criminal history.

Special Agents with the Texas Department of Public Safety have reason to believe that WALLACE is currently attempting to thwart law enforcement efforts in apprehending him.  PTB has an extensive network of criminal associates that are at WALLACE' [sic] disposal within the state of Texas, furthermore, Special Agents believe[sic] that WALLACE has absconded from his resident home in Victoria, Texas to Austin, Texas.  This information is based on a source of information (SOI) that has proven truthful and reliable in the past and further furnished a phone number for Wallace, 512-XXX-3402.  Area code 512 is predominantly central Texas including Austin.  Open source indicates that phone number 512-XXX-3402 is on a Nextel/AT&T carrier plan.  The SOI further explains that WALLACE is utilizing phone number 512-XXX-3402 as WALLACE'S personal phone number as of 4/29/2015; the same day WALLACE gave the SOI WALLACE'S phone number.

It is the belief of affiant that the information sought is material to an ongoing search for a violent fugitive Felon.  Affiant believes the information sought will assist to identify where the fugitive is located in order to apprehend him and protect the public from harm.

(ROA.330-31).

A state district judge in Travis County granted the application in full on May 6, 2015 (ROA.332-36).  Under "offense(s) being investigated," the order provided "fugitive from justice with the instant offense of: unlawful delivery of a controlled substance PG1, 4 grams to 200 grams"

10

(ROA.332).  As part of its findings, the district court noted that "Applicant

has certified that the information likely to be obtained by such use is

relevant to an ongoing criminal investigation being conducted by the

Investigative Agency into the specified criminal violation(s) and is based

on probable cause" (ROA.332).  In addition, the judge determined that,

pursuant to Tex. Code Crim. P. Ann. Art. 18.21 §§ 2(b) and 2(c) and

consistent with 18 U.S.C. § 2703(c)(1)(B), 2703(c)(2) and 2703(d), the

Applicant presented:

> [S]pecific and articulable facts showing that there are
> reasonable grounds to believe that the subscriber information
> and other records for dialing, routing, addressing, and
> signaling information transmitted to and from the Target
> Device are relevant and material to an ongoing investigation
> of the specified offenses; and that Applicant and Affiant have
> further established probable cause to believe the requested
> location information, including but not limited to cell site
> tower/sector and "E911" GPS or "triangulation" information,
> will lead to Suspect's arrest or will yield evidence of a crime
> or contraband.

(ROA.332-33).  The Ping Order authorized the requested cellphone data

for 60 days following the date of the order (ROA.334-35).

After the Ping Order issued, Agent Hallett learned from Agent

Rodriguez that Wallace's phone had been turned off (ROA.168).  Agent

Hallett presumed that a fugitive who drops a phone or changes a number

11

is "involved in either criminal activity or trying to avoid apprehension" (ROA.198). Agent Rodriguez believed that the dropped number indicated Wallace's attempt to thwart law enforcement because he was supposed to be in Victoria, but the area code for his dropped phone came from Austin (ROA.215). When the arrest warrant issued, Wallace was supposed to be in Victoria, but agents learned that he was in Austin (ROA.217-18).

Agent Hallett called his informant back and received a new number for Wallace a few days later (ROA.160). The state assistant district attorney filed a new application on May 8, 2015, seeking the same types of authorizations as the prior application (ROA.337-42). Agent Rodriguez's affidavit contained the following additional information:

> Recently and within the last week as of the date of this affidavit Affiant has learned that target phone number, 512-***-3402, is no longer being used by WALLACE. WALLACE has since acquired a new phone number that is on the AT&T carrier plan, 512-XXX-2295. Affiant has received this information from the same source of information (SOI) as stated above in this affidavit.

> Affiant knows through his training and experience that individuals involved in criminal activity tend to drop their phones frequently in order to thwart law enforcement's efforts to accurately determine their location and the criminal activity that they are associated with. It is believed that the phone number 512-XXX-2295 is being utilized by WALLACE

12

and that the SOI is giving truthful and reliable information
as the SOI has done in the past.

(ROA.345). A Travis County district judge granted the application in full

and issued a Ping Order for the new cellphone number on May 8, 2015,

to be effective for 60 days (ROA.348-50).

Using a screenshot of GPS coordinates received from AT&T in

compliance with the court order, Agent Hallett located Wallace by a pond

on private property four days later, on May 12, 2015 (ROA.115-16, 173-

74). As officers approached him, Wallace ran into the pond (ROA.115-

16). When he emerged from the water, officers arrested him (ROA.116).

Officers found a Winchester Super X .22 magnum caliber round of

ammunition in Wallace's pocket, a black gun at the edge of the pond (later

identified as a Bersa Thunder .380 semi-automatic pistol), a box of

ammunition in the center console of his truck that matched the pistol,

and an empty holster in the driver's seat (ROA.116).

After the conclusion of the testimony, defense counsel reurged

Wallace's ground for suppression, i.e., that the absence of any specific

evidence to show an "ongoing criminal investigation" rendered the Ping

Order invalid (ROA.227-29). According to Wallace, the mere existence of

an arrest warrant for a probation violation did not qualify as an "ongoing criminal investigation" under either state or federal law (ROA.229).

### 3.     Memorandum Opinion & Order

The district court issued a detailed memorandum opinion and order (MO) denying Wallace's motion to suppress (ROA.113-19).  The active arrest warrant gave investigators the authority to seek the Ping Order, in accordance with state and federal laws (ROA.117-118).  Even if Wallace was correct that the arrest warrant did not authorize the order, the exclusionary rule did not apply to evidence obtained as a result of a violation of the SCA (ROA.118).  Relying upon Fifth Circuit precedent, the court recognized that suppression of the evidence is not a cognizable remedy under the SCA (ROA.118).  Finally, the court determined that the Fifth Circuit had previously rejected Fourth Amendment challenges to the constitutionality of the collection of cellular site location data under the SCA (ROA.119).  Wallace now appeals from the district court's ruling.

## SUMMARY OF THE ARGUMENT

I.     Wallace's waiver-of-appeal provision in District Court Case No. 6:15-CR-00057-1 bars his appeal in Appeal No. 16-40702 (responsive to

Wallace's Issue Three). He makes no argument that his guilty plea was involuntary. The United States invokes the waiver and this Court should dismiss Appeal No. 16-40702.

II.    In District Court Case No. 6:15-00030-1, Appeal No. 16-40701, the district court properly denied Wallace's motion to suppress evidence obtained from the Ping Order (responsive to Wallace's Issue One). The Ping Order, which authorized state law enforcement to obtain Wallace's cellular site location data, complied with the standards set forth in 18 U.S.C. §§ 2703(d), 3123(a)(2), and Tex. Code Crim. P. 18.21. The applications and supporting affidavits set forth specific and detailed facts establishing an "ongoing criminal investigation," as evidenced by Wallace's outstanding arrest warrant for delivery of a controlled substance, Wallace's violent criminal history, and his efforts to evade law enforcement. Even if a violation of the § 2703(d) occurred, suppression of the evidence obtained from the Ping Order is not an available remedy under the SCA.

III.    This Court need not decide whether the use of prospective cellular site location information under 18 U.S.C. § 2703(d) qualifies as a "search" under the Fourth Amendment because the good-faith exception applies

(responsive to Wallace's Issue Two).  Here, it was objectively reasonable for law enforcement officers to apply for the data under § 2703(d) where the plain language of the statute makes no distinction between prospective and historical data, case law is unsettled in this area of the law, and valid court orders from the district judge were entitled to deference.

In any event, authority from other federal courts persuasively supports that no Fourth Amendment expectation of privacy exists in the use of prospective cellular site location information under the SCA.  The district court properly rejected Wallace's challenge to the constitutionality of § 2703(d) and denied his motion to suppress.

## **ARGUMENT**

### **I.**

The United States invokes the appeal waiver provision in the Wallace's written plea agreement in Appeal No. 16-40702. This appeal should be dismissed (responsive to Wallace's Issue Three).

The written plea agreement in District Court Case No. 6:15-CR-00057-1, Appeal No. 16-40702, contains the following relevant waiver provisions:

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The defendant understands that the sentencing range is advisory only, therefore the Court many impose a sentence that is lower or higher than that range. The United States does not make any promise or representation concerning what sentence the defendant will receive.

(ROA.16-40702.25-26).

In his third issue on appeal, Wallace argues that the retaliation case, Appeal No. 16-40702, should remanded based upon the erroneous district court ruling in his suppression motion filed in the firearm case in

17

Appeal No. 16-40701 (Appellant's Brief, 19). Wallace's waiver-of-appeal provision in the retaliation case, Appeal No. 16-40702, waived all of his appellate rights with the exception of a claim of ineffective assistance of counsel (not raised here) (ROA.16-40702.25). Wallace does not allege that his guilty plea in the retaliation case was unknowing or involuntary. *See United States v. Melancon,* 972 F.2d 566, 567 (5th Cir. 1992) (acknowledging that a waiver of appeal must be informed and voluntary). He did not file a rearraignment transcript. *See* Fed. R. App. P. 10(b); *Richardson v. Henry,* 902 F.2d 414, 415-16 (5th Cir. 1990) (noting that it is defendant's responsibility to order rearraignment transcript if he seeks to challenge findings or conclusions based on that proceeding); *United States v. Villarreal,* 650 F. App'x 200, 202 n.1 (5th Cir. 2016) (unpublished)[5] (same). Accordingly, as to Appeal No. 16-40702, the United States invokes the appellate waiver provision in the Plea Agreement (ROA.16-40702.25-26). The appellate waiver is valid and enforceable and the United States respectfully requests that this Court

---

[5] Unpublished cases "are not controlling precedent, ... [but] may be considered persuasive authority." *United States v. Johnson*, 619 F.3d 469, 473 n.3 (5th Cir. 2010); 5th Cir. R. 47.5.4.

18

summarily dismiss Appeal No. 16-40702.  *See United States v. Jacobs*, 635 F.3d 778 (5th Cir. 2011) (granting motion to summarily dismiss appeal in light of appellate waiver); *see also Melancon*, 972 F.2d at 567-68.

In the alternative, should this Court not dismiss the appeal based upon the appellate waiver, Wallace's "Issue Three" is not an independent appellate issue (Appellant's Brief, 19).  Rather, Wallace merely acknowledges that the appeals are consolidated.  Based upon the United States's briefing that no error occurred under the SCA and that no Fourth Amendment violation occurred, the judgment in the retaliation case, Appeal No. 16-40702, should likewise be affirmed in its entirety.

## II.

The district court properly denied Wallace's suppression motion because the applications for cellular location data established an "ongoing criminal investigation" under relevant federal and state authority (responsive to Wallace's Issue One).

1. <u>Standard of Review</u>

Wallace argues that because no "ongoing criminal investigation" existed, the Ping Order was invalid under 18 U.S.C. §§ 2703(d), 3123(a)(2), and Tex. Code Crim. P. Art. 18.21 (Appellant's Brief, 9-14).

He essentially challenges the district court's denial of his motion to suppress (Appellant's Brief, 11-14). This Court reviews the district court's legal ruling on a motion to suppress de novo and any factual findings for clear error. *United States v. Turner,* 839 F.3d 429, 432 (5th Cir. 2016). The evidence is viewed in the light most favorable to the prevailing party, here, the United States. *Id.* (citation omitted). This Court can affirm the ruling of the district court on any basis supported by the record. *Id.* (citation omitted).

2.    <u>The Ping Order complied with federal and state law.</u>

Wallace argues that no "ongoing criminal investigation" existed to support the Ping Order because: (1) the arrest warrant, which he also describes as a "quick warrant," was for "technical violations" of his probation, rather than for new criminal activity; (2) his gang membership was insufficient criminal activity; and (3) any allegation that he left his residence in Victoria to "thwart law enforcement" was overbroad and conclusory (Appellant's Brief, 11-13).

A.    **Relevant Statutes**

The Electronic Communications Privacy Act of 1986 ("ECPA") governs electronic surveillance. Pub. L. No. 99-508 (HR 4952), 100 Stat

1848 (1986). Title II of the ECPA includes the Stored Communications Act ("SCA,"). 18 U.S.C. § 2701 *et. seq*, which addresses the disclosure of stored electronic communications by service providers. *See In re U.S. for Historical Cell Site Data,* 724 F.3d 600, 606 (5th Cir. 2013). With respect to the disclosure of non-content records or subscriber information, the SCA requires the law enforcement agency to either obtain a search warrant under 18 U.S.C. § 2703(c)(1)(A) that complies with Fed. R. Crim. P. 41 (or state authority) or to obtain a court order under 18 U.S.C. § 2703(c)(1)(B), (d). In Wallace's case, the state prosecutor sought a court order under § 2703(c)(1)(B) (ROA.323-28, 337-42). Subsection 18 U.S.C. § 2703(d) authorizes the district court to issue an order of disclosure only if the governmental entity offers "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an *ongoing criminal investigation.*" *United States v. Guerrero,* 768 F.3d 351, 358 (5th Cir. 2014) (emphasis added).

Title III of the ECPA addresses pen registers and trap and trace devices ("Pen/Trap Statute"). 18 U.S.C. § 3123(a)(2) instructs the district court to authorize the use of pen registers and trap and trace devices if

the government certifies that "the information obtained by such installment and use is relevant to an *ongoing criminal investigation*" (emphasis added).

The state counterpart to the above-cited federal statutes is Tex. Code Crim. P. Ann. Art. 18.21 § 14(a)(1) (West 2015), which authorizes a district court judge to issue an order to track a mobile device.  In its application to the district court, law enforcement must establish "reasonable suspicion" to believe that (1) criminal activity has been, is, or will be committed; and (2) "the installation and use of the device is likely to produce information that is material to an *ongoing criminal investigation* of criminal activity." § 14(c) (emphasis added).

### B.    No Violation of Federal or State Statutes

Wallace contends that the common thread among all of these statutes, the requirement of an "ongoing criminal investigation," is absent in his case (Appellant's Brief, 9-13).   He argues that the outstanding arrest warrant, which he calls a "quick warrant," is insufficient to establish an "ongoing criminal investigation" because it is for "technical violations" of his probation (Appellant's Brief, 11, 13). Wallace fails to cite to any supporting authority.

He does not argue that the state arrest warrant, which charged him with unlawful delivery of a controlled substance, was invalid or not supported by probable cause (Appellant's Brief, 13).   Agent Hallett testified that he was unaware of the term "quick warrant" (ROA.175). Agent Rodriguez further testified that an arrest warrant for a probation violation was no different than an arrest warrant for any other type of offense (ROA.224).   The Ping Order applications referenced the valid arrest warrant, and the affidavits from Agent Rodriguez established probable cause to believe that Wallace possessed the target phones (ROA.325, 330, 339, 344).   Agent Rodriguez believed that Wallace possessed the phone numbers based upon reliable and credible information from a confidential informant (ROA.330, 344-45).   At the suppression hearing, Agent Rodriguez explained that he had worked with the informant for months and that the informant had provided helpful information in over eight cases, leading to multiple indictments (ROA.181-82).

Several federal courts agree that the existence of an active arrest warrant meets the standards set forth in the SCA to obtain cell site location data.  In *United States v. Bermudez,* 2006 WL 3197181 at * 1,

23

\* 6 (S.D. Ind. Jun. 30, 2006), *aff'd sub nom., United States v. Amaral-Estrada,* 509 F.3d 820 (7th Cir. 2007) (unpublished), officers obtained an order under the SCA and the Pen/Trap Statute to assist in the execution of an arrest warrant.    The defendant filed a motion to suppress the cellular site information, arguing that a warrant supported by probable cause was required.    *Id.* at \* 6.    The court agreed with the government's argument that, if a warrant was required, the arrest warrant gave law enforcement the authority to enter the target's home to search for the defendant.    *Id.* at \* 11 (holding that any warrant requirement was satisfied by the arrest warrant that had issued prior to the order for cell site location information "CSLI").    The court summarized:    "The Arrest Warrant gave law enforcement the authority to physically enter a target's home in order to search for the target . . . and also gave law enforcement the authority to conduct a less intrusive search for the fugitive by tracking cell location information in an effort to locate him, even if it invaded the apartment he rented."    *Id.*    The court found support from the Supreme Court's holding in *Payton v. N.Y.,* 445 U.S. 573, 603 (1980), wherein the Court held that for "Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the

limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at * 13; *see also In re Smartphone Geolocation Data Application,* 977 F. Supp. 2d 129, 147 (E.D.N.Y. 2013) (holding that "the issuance of the arrest warrant undermines any privacy interest in prospective geolocation data").

Even where the government obtains a search warrant under 18 US.C. § 2703(c)(1)(A) of the SCA to obtain cellphone location data, the search warrant need only reference that an arrest warrant merely exists and that the target phone is in the fugitive's possession (ROA.117).  In *In re Application of U.S. for an Order: (1) Authorizing Use of a Pen Register & Trap & Trace Device; (2) Authorizing Release of Subscriber & Other Info.; & (3) Authorizing Disclosure of Location-Based Servs.,* 727 F. Supp. 2d 571, 584 n.22 (W.D. Tex. 2010),  the district court specifically held that, "In a case in which the Government is seeking [cellular site information] to track a person so that an arrest warrant may be executed, it will be sufficient if the warrant affidavit demonstrates the existence of the warrant, and probable cause to believe that the target phone is in possession of the fugitive."

The aforementioned cases make no distinction regarding the type of arrest warrant (ie., probation violation, felony offense, misdemeanor, etc.).  Rather, for an arrest warrant to serve as the basis for a Ping Order under the SCA or under § 3123(a)(2), the arrest warrant need only be active and valid.  *See Bermudez,* 2006 WL 3197181 at * 10- * 11; *In re Smartphone Geolocation Data Application,* 977 F. Supp. 2d at 147; *see also In re Application,* 727 F. Supp. 2d at 584 n.22.

At least one state court has recognized an arrest warrant that authorities seek to execute supports a Ping Order under Tex. Code Crim. P. Art. 18.21.  In *Amilpas v. State,* 2015 WL 1869458 at * 1, (Tex. App. - Houston [1st Dist.] Apr. 23, 2015) (unpublished), the Houston Police Department attempted to serve an arrest warrant for a felon evading arrest.  *Id.* at * 1.  The police department obtained an order for Amilpas's cellphone data to locate him.  *Id.* at * 3.  Amilpas filed unsuccessful motions to suppress and appealed the district court's ruling.  *Id.*  He relied upon *United States v. Jones,* 132 S. Ct. 945 (2012), where the Supreme Court determined that the placement of a GPS tracking device on a defendant's car and subsequent use of the information to secure an arrest warrant amounted to an illegal search under the Fourth

Amendment. *Id.* The appellate court distinguished *Jones*, because unlike *Jones,* "a warrant for Amilpas's arrest for evading arrest had issued before police obtained Amilpas's cellphone data, and the police requested and used the cellphone data merely to locate Amilpas in order to execute the outstanding warrant." *Id.* Further, unlike the facts in *Jones* where law enforcement determined the defendant's location by the mounting a GPS tracking device on his car, the information stored on Amilpas's cellphone was obtained from a third party provider, Sprint-Nextel. Sprint used Amilpas's cellphone data for its own business purposes. Thus, the officer "obtained that data from Sprint-Nextel, rather than gathering the data himself." 2015 WL 1869458 at * 3. The appellate court affirmed the district court's suppression ruling. 2015 WL 1869458 at * 1.

Wallace relies upon *In re Application for an Order Authorizing the Installation and Use of a Pen Register & Directing the Disclosure of Telecommunications Records for Cellular Phones assigned the No. Sealed,* 439 F. Supp. 2d 456, 456 (D. Md. 2006), but that case involves an entirely different factual scenario. In that case, the government submitted an application for cellphone site location data to track a

fugitive only under the Pen/Trap Statute. 439 F. Supp.2d at 456-57. Further, unlike Wallace's case, no outstanding arrest warrant existed and no sworn affidavit existed attesting to the facts in the application. *Id.* The district court in *In re Application* noted that if the government provided a sworn affidavit to attest to the facts in the applications, the court would issue a search warrant under 18 U.S.C. § 2703(c)(1)(A). *Id.* at 456-58. Wallace's case is distinguishable because: (1) the government filed its applications for cellphone location data under the Pen/Trap Statute and the SCA; (2) an outstanding arrest warrant for delivery of a controlled substance existed; and (3) the Ping Order applications and affidavits supported an "ongoing criminal investigation" evidenced by the outstanding arrest warrant for delivery of a controlled substance, by Wallace's violent criminal history, by the need to protect the public from Wallace, and by the agent's belief that Wallace was evading arrest (ROA.323-31, 337-46).

Wallace next argues that his gang membership was insufficient evidence of criminal activity and that his fugitive status was conclusory (Appellant's Brief, 11-13). Specifically, he asserts that an "unsupported

allegation of fugitive status does not alone constitute justification for a warrant" (Appellant's Brief, 13-14).

Neither Wallace's gang membership nor his fugitive status was the sole justification for the Ping Order. Agents Rodriguez and Hallett considered Wallace's gang membership in the violent PTB gang and fugitive status *in conjunction with* his past criminal activity and his outstanding arrest warrant for delivery of a controlled substance. Agent Rodriguez's supporting affidavits detailed Wallace's extensive criminal history, including aggravated assault with a deadly weapon, burglary of a habitation, possession of marijuana, delivery of marijuana, and manufacturing or delivery and delivery of a controlled substance, as a grounds for "urgency to locate Wallace and protect him from the public" (ROA.344-45). Further, the outstanding arrest warrant for delivery of a controlled substance provided further support for the Ping Order applications (ROA.344).

The allegation of Wallace's fugitive status set forth in Agent Rodriguez's affidavit was not conclusory and overbroad as Wallace suggests. The affidavit set forth Agent Rodriguez's belief, based upon eleven years of law enforcement, that Wallace changed cellphone

numbers to evade law enforcement (ROA.200, 345).  At the evidentiary hearing, Agent Hallett testified that his confidential source believed Wallace fled to Austin immediately following the issuance of the Victoria arrest warrant (ROA.217-18).  The Ping Order identified the "offense being investigated" as "fugitive from justice with the instant offense of unlawful delivery of a controlled substance PG1, 4 grams to 200 grams" (ROA.347).  Thus, Wallace's contention that his fugitive status is "unsupported" and further, that the fugitive status was the sole consideration in the application for the Ping Order, fails on this record.

## C.     Even Assuming Arguendo that a Violation of the SCA Exists, Suppression is not an available Remedy.

Even assuming arguendo that the Ping Order applications fail to support a showing of "ongoing criminal activity," the district court correctly held that suppression is not an available remedy for a violation of the SCA (ROA.118).  In *Guerrero,* this Court found a clear violation of the SCA where cellular site location data was obtained by a state subpoena instead of by a § 2703(d) order.  768 F.3d at 358.  Guerrero filed a motion to suppress the data based upon the violation, which the district court denied.  *Id.* at 357.  In affirming the district court's denial of suppression, this Court specifically held that "suppression is not a

30

remedy for a violation of the Stored Communications Act." *Id.* at 358. The SCA provides a narrow list of judicial remedies and sanctions for non-constitutional violations. *Id.* Sister circuits similarly hold that no statutory suppression remedy exists for non-constitutional violations of the SCA. *See United States v. Carpenter,* 819 F.3d 880, 890 (6th Cir. 2016) (citing *Guerrero* and noting that only civil remedies exist for violations of the SCA, not suppression of evidence obtained); *United States v. Clenney,* 631 F.3d 658, 667 (4th Cir. 2011); *United States v. Perrine,* 518 F.3d 1196, 1202 (10th Cir. 2008); *United States v. Smith,* 155 F.3d 1051, 1056 (9th Cir. 1998); *United States v. Powell,* 444 F. App'x 517, 520 (3rd Cir. 2011) (unpublished). Accordingly, the district court correctly denied Wallace's motion to suppress based upon an alleged violation of federal and state law. *See Turner,* 839 F.3d at 432.

## III.

Law enforcement relied in good faith upon valid court orders authorizing the use of prospective cellular site location information under 18 U.S.C. § 2703(d) of the Stored Communications Act. No Fourth Amendment violation exists (responsive to Wallace's Issue Two).

1.  <u>Standard of Review</u>

Wallace challenges the constitutionality of 18 U.S.C. § 2703(d) under the Fourth Amendment because this subsection of the SCA authorizes the disclosure of prospective, real-time cellular site location information ("CSLI") by a court order instead of by a warrant supported by probable cause (Appellant's Brief, 14-19). This Court reviews de novo a challenge to the constitutionality of a federal statute. *Historical Cell Site*, 724 F.3d at 603 (citation omitted). The district court's factual findings are reviewed for clear error. *See id.* Clear error exists where the reviewing court, after examining all of the evidence, "is left with a firm and definite conviction that a mistake has been committed." *Id.* (citations omitted). Wallace bears the burden of establishing by the preponderance of the evidence that the evidence obtained was in violation of his Fourth Amendment rights. *See Turner,* 839 F.3d at 432.

2.   Fourth Amendment Jurisprudence

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.  To establish a Fourth Amendment claim, an individual must have "a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland,* 442 U.S. 735, 740 (1979) (internal quotations omitted).

In general, the appropriate remedy for a Fourth Amendment violation is suppression of the illegally-obtained evidence.  *See Mapp v. Ohio,* 367 U.S. 643, 655 (1961).  But the purpose of the exclusionary rule is to deter future unlawful police conduct.  *Illinois v. Krull,* 480 U.S. 340, 347 (1987).  Therefore, the Supreme Court recognizes that exclusion is not required "when the police act with an objectively reasonable good-faith belief that their conduct is lawful."  *Davis v. United States,* 564 U.S. 229, 238-39 (2011) (citing *United States v. Leon,* 468 U.S. 897, 909 (1984)).

### A.     Historical CSLI under 18 U.S.C. § 2703(d)

A cellphone can be located in two ways.  First, cell phone towers near the target cellphone create a record of the cellphone's location and generate a historical log of the phone's movements.  *See United States v. Caraballo,* 831 F.3d 95, 99 (2d Cir.), *pet. for cert. filed,* No.16-6641 (Oct. 26, 2016).  This "historical" type of CSLI is of limited precision and refers to cellphone records that the "provider has already created" or retrospective cell site data.  *See Caraballo,* 831 F.3d at 99; *Guerrero,* 768 F.3d at 359.  Second, a cell phone's location can be determined based upon its GPS location, also referred to as "E911 data."  It is a more precise, real-time resource, than historical CSLI.  *See Caraballo,* 831 F.3d at 99.

Whether the government's access to CSLI constitutes a "search" subject to the Fourth Amendment's probable cause standard requires an analysis under *Katz v. United States,* 389 U.S. 347, 353 (1967).  *See Historical Cell Site,* 724 F.3d at 605-06.  A Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable.  *See Katz,* 389 U.S. at 361.

With respect to historical CSLI obtained by a court order under 18 U.S.C. § 2703(d) of the SCA, this Circuit has held that no reasonable expectation of privacy exists in such data:

> [C]ell phone users voluntarily convey information to their service providers and reasoned that they 'understand that their service providers record their location information when they use their phones at least to the same extent that the landline users in *Smith v. Maryland,* 442 U.S. 735 (1979) understood that the phone company recorded the numbers they dialed.
>
> * * *
>
> We understand that cell phone users may reasonably want their location information to remain private, just as they may want their trash, placed curbside in opaque bags, . . . or the view of their property from 400 feet above the ground, . . . to remain so. But the recourse for these desires is in the market or the political process: in demanding that service providers do away with such records (or anonymize them) or in lobbying elected representatives to enact statutory protections. The Fourth Amendment, safeguarded by the courts, protects only reasonable *expectations* of privacy.

*Historical Cell Site,* 724 F.3d at 613, 615 (emphasis in original) (citations omitted); *see Guerrero,* 768 F.3d at 358-61. In sum, this Court held that: "The SCA's authorization of § 2703(d) orders for historical cell site information if the application meets the lesser, 'specific and articulable facts' standard, rather than the Fourth Amendment probable cause standard, is not per se unconstitutional." *Historical Cell Site,* 724 F.3d

at 615.  Numerous sister circuits have reached the same conclusion that government access to historical CSLI under § 2703(d) does not implicate the Fourth Amendment because no expectation of privacy exists where cellphone users voluntarily convey their CSLI to third-party providers. *See United States v. Graham,* 824 F.3d 421, 424-28 (4th Cir. 2016) (en banc); *United States v. Carpenter,* 819 F.3d 880, 887-89 (6th Cir. 2016); *United States v. Davis,* 785 F.3d 498, 505-18 (11th Cir.), *cert. denied,* 136 S. Ct. 479 (2015) (en banc); *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't,* 620 F.3d 304, 313, 317 (3rd Cir. 2010).

### B.     Prospective CSLI under 18 U.S.C. § 2703(d)

Wallace limits his constitutional challenge to prospective CSLI under 18 U.S.C. § 2703(d) (Appellant's Brief, 14-19).  "Prospective" CSLI refers to "real-time" cell site location data or the acquisition of data generated in the future, for a time period going forward from the date of the § 2703(d) order.  *See United States v. Espudo,* 954 F. Supp. 2d 1029, 1034 (S.D. Cal. 2013).  Wallace argues that prospective CSLI qualifies as a "search" under the Fourth Amendment, for which a warrant supported by probable cause must be obtained (Appellant's Brief, 14-19).  Wallace

does not cite appellate authority from this, or any other Circuit, that has held that the use of prospective CSLI under § 2703(d) qualifies as a "search" under the Fourth Amendment, such that the government must demonstrate probable cause and a search warrant.  To date, undersigned counsel is unaware of any Supreme Court case addressing whether the use of either historical or prospective CSLI under § 2703(d) implicates the Fourth Amendment.

### 1.   Good Faith Exception

It is unnecessary for this Court to decide whether the use of prospective CSLI under 18 U.S.C. § 2703(d) qualifies as a "search" under the Fourth Amendment because the good-faith doctrine applies in any event.  *See United States v. Allen,* 625 F.3d 830, 835 (5th Cir. 2010) (recognizing that "First, we ask whether the seizure falls within the good-faith exception to the exclusionary rule . . . [i]f the good faith-exception applies, this court affirms the district court's decision denying the motion to suppress."); *United States v. Koch,* 625 F.3d 470, 476-77 (8th Cir. 2010) (pretermitting whether Fourth Amendment violation existed where agents had an objective good faith belief in the legality of their search); *United States v. Craig,* 861 F.2d 818, 820 (5th Cir. 1988) (noting that

"Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter."); *Espudo,* 954 F. Supp. 2d at 1043-45 (pretermitting the question of a Fourth Amendment violation by the use of prospective CSLI under a § 2703(d) order instead of by a warrant supported by probable cause under § 2703(c)(1)(A)); *United States v. Jones,* 908 F. Supp. 2d 203, 213-15 (D.D.C. 2012) (declining to decide whether prospective CSLI constituted a "search" under the Fourth Amendment because the good-faith exception applied).

Here, it was reasonable for state law enforcement officers to apply for prospective CSLI data under § 2703(d).  First, the plain language of the SCA makes no distinction between prospective and historical CSLI, noting simply that the government may obtain "record[s] or other information" relating to a cellular telephone company's subscribers.  18 U.S.C. § 2703(c)(1); s*ee Espudo,* 954 F. Supp. 2d at 1045 (holding that the Government's reliance on the language of the SCA to obtain prospective CSLI without a warrant was reasonable); *see also United States v.*

38

*Watson,* 423 U.S. 411, 416 (1976) (applying presumption of constitutionality to Acts of Congress).

Second, the question whether prospective CSLI is a "search" under the Fourth Amendment remains an unsettled area of the law. Granted, a majority of federal district courts hold that the government must make a showing of probable cause and obtain a warrant under § 2703(c)(1)(A) to obtain prospective, real-time CSLI. *See eg., Espudo,* 954 F. Supp. 2d at 1035 (collecting cases) *but see In re Application of the U.S. for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone,* 460 F. Supp. 2d 448, 450-63 (S.D.N.Y. 2006). However, the majority view does "not make an independent determination that the use of such information violates an individual's reasonable expectation of privacy and therefore constitutes a violation of the Fourth Amendment." *Jones,* 908 F. Supp. 2d at 213 n.14.

Under such circumstances, where the law is unsettled, "officers cannot be charged with knowledge that § 2703(c) does not apply to prospective cell-site data, especially given the fact that even now . . . there is still no definite resolution of this question by any appellate court." *Jones,* 908 F. Supp. 2d at 215; *see Espudo,* 954 F. Supp. 2d at 1045

(denying motion to suppress on good faith exception where the government's reliance on § 2703(d) to obtain prospective CSLI was presumptively reasonable in the absence of a "clear, controlling case explicitly stating that the government may not obtain real-time cell location data under the SCA. At most, there are only conflicting district court decisions on the subject"); *United States v. Booker,* 2013 WL 2903562 at * 2, * 13 (N.D. Ga. June 13, 2013) (unpublished) (applying good faith exception to Fourth Amendment challenge to the use of prospective CSLI given the conflicts among courts on the issue); *see also United States v. Pembrook,* 119 F. Supp. 3d 577, 595 (E.D. Mich. 2015) (holding that "Given the split in persuasive authority at the time the Government acted, even charging the Government with knowledge of cases finding or suggesting that a warrant was required to obtain the cell-site data associated with Calhoun's accounts, the Court cannot say that the Government recklessly disregarded Calhoun's Fourth Amendment rights by proceeding without a warrant.").

Third, it was reasonable for law enforcement to rely upon the orders from the district judge granting their applications. *See Leon,* 468 U.S. at 921 (noting that ordinarily law enforcement cannot be expected to

question the magistrate's judgment about the sufficiency of the order; rather, law enforcement is charged with complying with the law); *Espudo,* 954 F. Supp. 2d at 1044 (declining to examine Fourth Amendment claim because government relied in good faith on orders obtained under § 2703(d) for prospective CSLI); *see also Pembrook,* 119 F. Supp. 3d at 595 (finding support for good faith exception where Government obtained cell data through a court order issued by a magistrate judge under § 2703(d)); *United States v. Ferguson,* 508 F. Supp. 2d 7, 9 (D.D.C. 2007) ("The fact that a neutral Magistrate Judge approved the Government's applications under the SCA provides further reason to deem the Government's reliance on the SCA to be objectively reasonable.").  Law enforcement is permitted to rely in good faith upon a judge's authorization unless one of four circumstances exist, none of which are present here:  (1) where the judge was misled by information in an affidavit that the affiant knew was false; (2) where the judge wholly abandoned his or her judicial role; (3) where a warrant is so lacking in probable cause; and (4) where the warrant is facially deficient.  *United States v. Stalnaker,* 571 F.3d 428, 436 (5th Cir. 2009).  Although several of the four circumstances do not exist given the absence of a search

41

warrant, no facts exist in the applications here to suggest "misdirection, judicial abdication, unreasonableness, or vagueness are present or argued here [by Wallace]." *United States v. Muniz,* 2013 WL 391161 at * 4 (S.D. Tex. Jan. 29, 2013) (unpublished).

In Wallace's case, the state district judge considered the government's § 2703(d) applications and supporting affidavits from Agent Rodriguez and determined that they satisfied the standard of "specific and articulable facts" establishing information relevant to an "ongoing criminal investigation" in compliance with §2703(d). *See Espudo,* 954 F. Supp. 2d at 1044 (applying good faith exception to use of prospective CSLI under § 2703(d) where, inter alia, the district judge applied the correct standard under the SCA); *see also Leon,* 468 U.S. at 921 (noting that deference is paid to magistrate judge's regard for the Fourth Amendment). It was objectively reasonable for state officials to rely upon the independent judicial determination that no warrant under § 2703(c)(1)(A) was required. *See Espudo,* 954 F. Supp. 2d at 1044; *Jones,* 908 F. Supp. 2d at 215; *see also Pembrook,* 119 F. Supp. 3d at 595; *Ferguson,* 508 F. Supp. 2d at 9.

In sum, given the plain language of the SCA, the unsettled law in this area of prospective CSLI, and the valid court orders explicitly authorizing the use of prospective CSLI, it was objectively reasonable for law enforcement to believe that Wallace's prospective CSLI had no Fourth Amendment implications. *See Allen,* 625 F. 3d at 835; *Espudo*, 954 F. Supp. 2d at 1043-45; *Jones,* 908 F. Supp. 2d at 214-16.

2.   No Fourth Amendment "Search" exists in the use of Prospective CSLI

Should this Court decide to reach the merits of whether the use of prospective CSLI under § 2703(d) qualifies as a "search" under the Fourth Amendment, persuasive authority from other federal courts suggests the answer is no.

In *United States v. Skinner,* 690 F.3d 772, 775-76 (6th Cir. 2012), law enforcement obtained court orders authorizing the cellphone company to release GPS real-time location information in order to ascertain a drug dealer's location during a drug delivery. Skinner filed a motion to suppress a subsequent search of the location derived from the technology, arguing that the use of the GPS location information emitted from his cellphone constituted a warrantless search in violation of the Fourth Amendment. *Id.* at 776. Rejecting Skinner's argument, the Sixth

43

Circuit held that no Fourth Amendment expectation of privacy existed in data emitted by Skinner's voluntarily-procured cellphone. *Id.* at 777. The Sixth Circuit distinguished its holding from the Supreme Court's ruling in *Jones,* 132 S. Ct. at 948, where a Fourth Amendment violation occurred in law enforcement's secret placement of a tracking device on the defendant's car. Unlike the facts in *Jones,* no physical intrusion occurred in Skinner's case where he himself obtained the cellphone "for the purpose of communication, and that phone included the GPS technology used to track the phone's whereabouts." *Id.* at 780. Unlike the facts in *Jones,* where the real-time monitoring occurred over a 28-day period, agents in Skinner tracked his cellphone for three days. This "relatively short-term monitoring of a person's movements on public streets accords with expectations of movements of privacy that our society has recognized as reasonable." *Id.* at 780 (citing *Jones,* 132 S. Ct. at 964 (Alito, J., concurring)). In sum, Skinner had no Fourth Amendment expectation of privacy in the GPS data and location of his cellphone because "the Government never had physical contact with Skinner's cellphone; he obtained it, GPS technology and all, and could not object to its presence." *Id.* at 781.

Indeed, a federal district court from this Circuit relied upon the reasoning in *Skinner,* as well as this Court's ruling in *Historical Cell Site,* to acknowledge that "no great distinction exists between historical and prospective cell phone location data." *In re Application of the U.S. for an Order for Authorization to Obtain Location Data Concerning and AT & T Cellular Telephone,* 102 F. Supp. 3d 884, 888 (N.D. Miss. 2015). Relying on the third-party disclosure doctrine discussed in *Historical Cell Site,* the Mississippi federal court noted that the "'instantaneous storage theory,' which recognizes that, in the digital age, prospective data instantly becomes stored data, as soon as it is transmitted to a cell phone provider's servers." *Id.; see also United States v. Giddins,* 57 F. Supp. 3d 481, 494-95 (D. Md. 2014) (recognizing that Congress has struck an appropriate balance with the standards set forth in § 2703(d) and "if the arc of technological improvement (or implementation of that technology by the government) should be altered in a way that does infringe a person's legitimate expectation of privacy, the solution is properly for the legislature to address") (citation omitted).

Finally, at least one federal district court has soundly rejected that the use of the use of prospective CSLI implicates the Fourth Amendment.

*See In re Smartphone,* 977 F. Supp. 2d at 137-47.  In *In re Smartphone,* an arrest warrant supported by a supporting affidavit issued for a defendant for controlled substance violations under 18 U.S.C. § 846.  *Id.* at 131-32.  Unable to execute the warrant after various attempts, the government filed an application for a pen register and trap and trace device under 18 U.S.C. §§ 3122 & 3123 as well as an application for prospective cell site data under the search warrant provision of 18 U.S.C. § 2703(c)(1)(A) for the defendant's mobile telephone.  *Id.* at 132.

Relevant here, is the court's Fourth Amendment analysis with respect to whether the defendant had a reasonable expectation of privacy in his prospective CSLI. 977 F. Supp. 2d at 137-47.  Relying upon *Skinner,* as well as the Supreme Court's ruling in *Smith* that a person does not have a legitimate interest in information voluntarily conveyed to third parties, the district court made several points.  First, the transmission of CSLI, distinct from contents of phone calls, involved non-content information.  977 F. Supp. 2d at 145.  Second, the transmission of CSLI was voluntary on the part of the cellphone user:

> . . . [I]t is clearly within the knowledge of cell phone users that their telecommunication carrier, smartphone manufacturer and others are aware of the location of their cell phone at any given time. . .

* * *

Public ignorance as to the existence of cell-site-location records . . . cannot long be maintained.

* * *

As to control by the user, all of the known tracking technologies may be defeated by merely turning off the phone. Indeed – excluding apathy or inattention – the only reason users leave cell phones turned on is so that the device can be located to receive calls. Conversely, individuals who do not want to be disturbed by unwanted telephone calls at a particular time or place simply turn their phones off, knowing that they cannot be located.

* * *

[A] cell phone user such as the defendant can easily protect the privacy of location data – literally at the touch of a button – and should not be heard to complain if he fails to do so.

977 F. Supp. 2d at 146-47.

Third, the issuance of the arrest warrant "undermine[d] any privacy interest in prospective geolocation data." *In re Smartphone,* 977 F. Supp. 2d at 147 (quoting *Steagald v. United States,* 451 U.S. 204, 214 (1981) ([b]ecause an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home)). Thus, the district court concluded that, "The Fourth Amendment

47

cannot accord protection to geolocation data associated with a defendant's cell phone while denying such protection against a physical invasion of his home, as the latter is entitled to highest order of defense." 977 F. Supp. 2d at 147 (citing *Payton,* 445 U.S. at 585-86, recognizing that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"). Based upon the foregoing persuasive authority, no Fourth Amendment expectation of privacy exists in an order under § 2703(d) authorizing the use of prospective CSLI. *Historical Cell Site,* 724 F.3d at 603. The district court correctly denied Wallace's motion to suppress. *See Turner,* 839 F.3d at 432.

## CONCLUSION

This Court should affirm the judgment and sentence of the district court in Appeal No. 16-40701. This Court should summarily dismiss the appeal in Appeal No. 16-40702 based upon appellate waiver. Alternatively, this Court should affirm the judgment and sentence of the district court in Appeal No. 16-40702.

<div style="margin-left:50%">

Respectfully submitted,
KENNETH MAGIDSON
United States Attorney

RENATA A. GOWIE
Chief, Appellate Division

s/Lauretta Bahry
LAURETTA DRAKE BAHRY
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102

ATTORNEYS FOR APPELLEE

</div>

## **CERTIFICATE OF SERVICE**

I, Lauretta Drake Bahry, Assistant United States Attorney, hereby certify that on November 23, 2016, an electronic copy of Appellee's Brief was served by notice of electronic filing via this Court's CM/ECF system upon opposing counsel, Micah Wayne Hatley.

Upon notification that the electronically-filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be submitted to the Clerk. *See* 5th Cir. R. 25.2.1; 5th Cir. R. 31.1; 5th Cir. CM/ECF filing standard E(1).


<div style="text-align: right">

s/Lauretta Bahry
LAURETTA DRAKE BAHRY
Assistant United States Attorney

</div>

## **CERTIFICATE OF COMPLIANCE**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,642 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook, 14 point font for text and 12 point font for footnotes.

3.    This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.    This brief complies with the electronic submission of 5th Cir. R. 25.2.1, because it is an exact copy of the paper document.

5.    This brief is free of viruses because it has been scanned for viruses with the most recent version of Trend Micro scanning program.


s/Lauretta Bahry
LAURETTA DRAKE BAHRY
Assistant United States Attorney

Dated: November 23, 2016