Case Nos. 16-40701 and 16-40702

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

WILLIAM CHANCE WALLACE,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the Southern District of Texas, Victoria Division,
Criminal Nos. 6:15-CR-00030-1 & 6:15-CR-00057-1

_____

**PETITION FOR REHEARING**

_____

Micah W. Hatley
The Hatley Law Firm
P.O. Box 2113
302 W. Forrest Street
Victoria, TX 77902
Phone: (361) 489-3481
Fax: (361) 597-3167
mwhatley.hatleylawfirm@gmail.com

Nathan Freed Wessler
Brett Max Kaufman
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
nwessler@aclu.org

Kali Cohn
American Civil Liberties Union
    Foundation of Texas
6440 N. Central Expressway
Dallas, TX 75206
Phone: (214) 346-6577
Fax: (713) 942-8966

## Certificate of Interested Persons

UNITED STATES OF AMERICA,
                    Plaintiff–Appellee,

v.                              Nos. 16-40701 & 16-40702

WILLIAM CHANCE WALLACE,
                    Defendant–Appellant.
_____

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

I.    <u>Plaintiff–Appellee</u>:        United States of America

II.   <u>Defendant–Appellant</u>:     William Chance Wallace

III.  <u>Attorneys for Plaintiff–Appellee</u>:

    A. Lauretta Drake Bahry – Assistant United States Attorney

    B. Carmen Castillo Mitchell – Assistant United States Attorney

    C. Patricia Hubert Booth – Assistant United States Attorney

    D. Renata Gowie – Assistant United States Attorney

IV.   <u>Attorneys for Defendant–Appellant</u>:

    A. Micah W. Hatley – The Hatley Law Firm

    B. Nathan Freed Wessler – American Civil Liberties Union Foundation

    C. Brett Max Kaufman – American Civil Liberties Union Foundation

D. Kali Cohn – American Civil Liberties Union Foundation of Texas

/s/ Nathan Freed Wessler
Nathan Freed Wessler
Attorney of Record for Defendant–
Appellant William Chance Wallace

## Statement Regarding En Banc Review

En banc review is necessary to maintain uniformity of this Court's decisions and to address questions of exceptional importance. The panel held that it is not a Fourth Amendment search when law enforcement agents compel a cellular service provider to remotely enable the GPS functionality on a person's phone, collect the phone's precise GPS coordinates, and transmit that information to the government in real time.[1] The panel's conclusion that compelled real-time GPS tracking falls under this Court's cases addressing third-party business records conflicts with this Court's case law concerning the third-party doctrine, *see In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013), as well as Fifth Circuit and Supreme Court decisions addressing when a private party becomes a government actor for Fourth Amendment purposes, *see United States v. Grimes*, 244 F.3d 375 (5th Cir. 2001); *United States v. Paige*, 136 F.3d 1012 (5th Cir. 1998); *United States v. Blocker*, 104 F.3d 720 (5th Cir. 1997); *see also Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602 (1989). By conscripting Defendant's cellular service provider to obtain and provide to the government precise location

---

[1] The Global Positioning System, or GPS, allows "GPS receiver equipment," including cell phones, to "receive[] the signals from the GPS satellites and use[] the transmitted information to calculate the user's three-dimensional position." National Coordination Office for Space-Based Positioning, Navigation, and Timing, *The Global Positioning System: What is GPS?*, http://www.gps.gov/systems/gps/.

information that it would not otherwise have collected or possessed, the government effected a search under the Fourth Amendment.

The panel's decision also conflicts with Supreme Court precedent requiring a warrant for technological searches that reveal presence or activity within a home or other constitutionally protected space. *See Kyllo v. United States*, 533 U.S. 27 (2001); *United States v. Karo*, 468 U.S. 705 (1984). As reflected in the record, before eventually locating Defendant in an outdoor area, police tracked his phone to at least two indisputably private locations: his grandmother's home, and his own home. The panel erred in not recognizing that under Supreme Court precedent the use of technological surveillance to track a person into a home or detect that they are inside constitutes a Fourth Amendment search, and requires a warrant.

This case also raises questions of exceptional importance because the panel's decision conflicts with the decisions of other appellate courts, and because it significantly diminishes the right to privacy enshrined in the Fourth Amendment. The panel's conclusion that real-time cell phone location tracking does not require a warrant under the Fourth Amendment squarely conflicts with the Florida Supreme Court's decision in *Tracey v. State*, 152 So. 3d 504 (Fla. 2014), which held that "the use of [a suspect's] cell site location information emanating from his cell phone in order to track him in real time was a search within the purview of the Fourth Amendment for which probable cause was required." *Id.* at 526. More

iv

fundamentally, the panel's decision runs afoul of the Supreme Court's admonition not to "permit police technology to erode the privacy guaranteed by the Fourth Amendment." *Kyllo*, 533 U.S. at 34. Cellular service providers receive tens of thousands of requests for real-time cell phone location information each year. The panel's decision leaves residents of this Circuit vulnerable to the kind of pervasive, warrantless GPS tracking that so troubled a majority of the Justices in *United States v. Jones*, 565 U.S. 400 (2012). *See id.* at 413  (Sotomayor, J., concurring); *id.* at 418 (Alito, J., concurring in the judgment).

For these reasons, Defendant respectfully asks this Court to rehear the case en banc.

Finally, on June 5, 2017, the Supreme Court granted the petition for certiorari in *Carpenter v. United States*, No. 16-402, 2017 WL 2407484 (U.S. June 5, 2017) (Mem.), a case out of the Sixth Circuit raising the question whether a warrant is required for law enforcement access to historical cell site location information. *See United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016). Because the instant case does not involve cell site location information or any other location record collected and maintained by a service provider in the regular course of business, the outcome of *Carpenter* is unlikely to control the decision in this case. However, should the en banc Court agree with the panel that this is a third-party records case, Defendant respectfully requests that the Court withdraw the panel's

opinion and hold the case in abeyance pending a decision in *Carpenter*, as any

decision by the Supreme Court would implicate the panel's analysis of the third-

party doctrine.

**Statement Regarding Oral Argument**

Should the Court grant rehearing, Appellant respectfully requests oral argument. Appellant believes oral argument will assist the Court in its analysis of disputed constitutional, statutory, and factual issues presented in this appeal, and will enable counsel to address any questions the Court may have.

# Table of Contents

Certificate of Interested Persons ...................................................................i

Statement Regarding En Banc Review.................................................... iii

Statement Regarding Oral Argument .................................................... vii

Table of Authorities ................................................................................ix

Statement of Issues....................................................................................1

Course of Proceedings and Disposition of the Case .................................1

Statement of Facts.....................................................................................3

Argument....................................................................................................7

    I.      The Panel's Decision Misapplies the Third-Party Doctrine, in
           Conflict with Fifth Circuit and Supreme Court Precedent..........................8

    II.     The Panel's Conclusion that Real-Time Cell Phone Location
           Tracking Does Not Require a Warrant Conflicts with Supreme
           Court Precedent. ........................................................................12

    III.   The Panel Erred in Holding that the Good-Faith Exception to the
           Exclusionary Rule Applies.....................................................................15

Conclusion ...............................................................................................17

Certificate of Service ..............................................................................19

Certificate of Compliance .......................................................................20

APPENDIX: Panel Opinion.....................................................................21

# Table of Authorities

**Cases**

*Carpenter v. United States*, No. 16-402, 2017 WL 2407484 (U.S. June 5, 2017) .......................................................................................v, 17

*Ford v. State*, 477 S.W.3d 321 (Tex. Crim. App. 2015)..........................................16

*Illinois v. Krull*, 480 U.S. 340 (1987) ................................................................. 15, 17

*In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747 (S.D. Tex. 2005) ........................16

*In re Application of the U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526 (D. Md. 2011)....................................................................................................11

*In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013)....................................................................... passim

*Kyllo v. United States*, 533 U.S. 27 (2001).............................................. iv, v, 13, 17

*Skinner v. Ry. Labor Exec.'s Ass'n*, 489 U.S. 602 (1989) ................................. iii, 12

*State v. Harrison*, No. 02-13-00255-CR, 2014 WL 2466369 (Tex. App.—Fort Worth, May 30, 2014) .....................................................16

*Tracey v. State*, 152 So. 3d 504 (Fla. 2014)....................................................... iv, 14

*United States v. Blocker*, 104 F.3d 720 (5th Cir. 1997)........................................... iii

*United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016)........................................v

*United States v. Espudo*, 954 F. Supp. 2d 1029 (S.D. Cal. 2013) ..........................16

*United States v. Grimes*, 244 F.3d 375 (5th Cir. 2001) ..................................... iii, 12

*United States v. Jones*, 565 U.S. 400 (2012) .......................................................v, 14

*United States v. Karo*, 468 U.S. 705 (1984) ................................................. iv, 12, 13

*United States v. Miller*, 425 U.S. 435 (1976) ......................................................8, 11

*United States v. Myles*, No. 5:15-CR-172-F-2, 2016 WL 1695076
(E.D.N.C. Apr. 26, 2016)..................................................................................16

*United States v. Paige*, 136 F.3d 1012 (5th Cir. 1998).....................................iii, 12

*United States v. Turner*, 839 F.3d 429 (5th Cir. 2016)...........................................17

*United States v. Wallace*, __ F.3d __, 2017 WL 2221478 (5th Cir.
May 22, 2017)......................................................................................................2

## Statutes and Rules

18 U.S.C. § 1513.....................................................................................................2

18 U.S.C. § 2703........................................................................................ 3, 4, 16

18 U.S.C. § 3122.....................................................................................................4

18 U.S.C. § 922.......................................................................................................1

18 U.S.C. § 924.......................................................................................................1

Tex. Code Crim. Proc. art. 18.21 ..........................................................................4

## Other Authorities

AT&T, Transparency Report (Feb. 2017),
http://about.att.com/content/dam/csr/Transparency%20Reports/Feb
-2017-Transparency-Report.pdf .......................................................................15

National Coordination Office for Space-Based Positioning,
Navigation, and Timing, *The Global Positioning System: What is
GPS?*, http://www.gps.gov/systems/gps/............................................................ iii

Report and Order and Further Notice of Proposed Rulemaking, *In re
Revision of the Comm'n's Rules to Ensure Compatibility with
Enhanced 911 Emergency Calling Sys.*, 11 F.C.C. Rcd. 18676
(1996)..................................................................................................................10

Third Further Notice of Proposed Rulemaking, *In re Wireless E911
   Location Accuracy Requirements*, 29 FCC Rcd. 2374 (2014),
   https://apps.fcc.gov/edocs_public/attachmatch/FCC-14-13A1.pdf....................11

## Statement of Issues

1.     Whether the third-party doctrine excuses law enforcement agents from the Fourth Amendment's warrant requirement when they track a person's real-time GPS location by compelling a cellular service provider to cause a suspect's cell phone to transmit its precise GPS coordinates to the provider, which then immediately furnishes that information to the government.

2.     Whether the good-faith exception to the exclusionary rule applies when the government obtains real-time cell phone location information without a warrant in reliance on a statute that, according to the majority of courts considering the question, does not permit warrantless real-time cell phone location tracking.

## Course of Proceedings and Disposition of the Case

On December 30, 2015, Defendant–Appellant William Chance Wallace ("Defendant") was charged by a second superseding indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). (District Court Case No. 6:15-CR-00030-1). [ROA.16-40701.106-08; *see also* ROA.16-40701.28-30 (indictment); ROA.16-40701.40-41 (superseding indictment)]. Defendant filed a motion to suppress and amended motion to suppress challenging the warrantless tracking of his cell phone, which the district court denied. [ROA.16-40701.113-19]. Defendant pleaded guilty under the terms

of a plea agreement, reserving the right to appeal the denial of the amended motion to suppress. [ROA.16-40701.121-25].

A separate indictment filed on December 30, 2015, charged Defendant with aiding and abetting retaliation against a witness in a criminal investigation in violation of 18 U.S.C. § 1513(b)(3). (District Court Case No. 6:15-CR-00057-1). [ROA.16-40702.14]. Defendant pleaded guilty pursuant to a plea agreement. [ROA.16-40702.23-27]. The district court consolidated the cases for sentencing, and sentenced Defendant to 180 months' imprisonment in each, with the sentences to run concurrently, followed by three years of supervised release. [ROA.16-40701.129-30; ROA.16-40702.31-32]. Defendant timely filed notices of appeal in both cases on May 17, 2016. [ROA.16-40701.127; ROA.16-40702.37].

On appeal, a panel of this Court affirmed the district court's denial of Defendant's suppression motion. *United States v. Wallace*, __ F.3d __, 2017 WL 2221478 (5th Cir. May 22, 2017). Judge Clement authored the opinion, which Judges Jones and Higginson joined. Relying on this Court's 2013 decision holding that no warrant is required for government access to historical cell site location information ("CSLI") held by a cellular service provider, *In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013), the panel concluded that, likewise, no warrant is required to collect prospective (real-time) location information. Op.8. The panel reasoned that "there is little distinction

2

between historical and prospective cell site data"[2] because prospective data is "received by the cell phone service provider and stored, if only momentarily, before being forwarded to law enforcement officials." Op.8 (citation omitted). In the alternative, the panel affirmed on the basis that the good-faith exception to the exclusionary rule applies because law enforcement agents relied on the federal Stored Communications Act, 18 U.S.C. § 2703(c), when seeking Defendant's location information. Op.9-10.

### Statement of Facts

In May 2015, Special Agent Shawn Hallett of the Texas Department of Public Safety ("DPS") received information from a confidential informant indicating that Defendant was a member of the Puro Tango Blast gang and was a wanted fugitive. [ROA.16-40701.165].[3] The informant provided Defendant's phone number to Special Agent Hallett. [ROA.165]. Working with DPS Special Agent Jose Rodriguez, Special Agent Hallett searched for Defendant's name in a law enforcement database and found that there was an active warrant for Defendant's arrest. [ROA.166, 202]. Although it initially appeared that the warrant

---

[2] As explained below, law enforcement in this case did not actually obtain cell site data, but rather GPS coordinates of the phone.

[3] Hereinafter, citations to the Record on Appeal will refer to the record in Appeal No. 16-40701, and will be designated as "ROA.*pp*."

was for manufacture and delivery of a controlled substance, Agent Hallett later learned that the warrant was for a probation violation. [ROA.166, 178, 263].

In an attempt to locate Defendant in order to arrest him, Special Agent Rodriguez worked with a state prosecutor to file an application for a court order to authorize a request to Defendant's cellular service provider to precisely locate Defendant's phone and provide that location information to DPS. [ROA.168, 323-31]. The application, filed in Texas state court on May 6, 2015, sought authorization under the federal Stored Communications Act, 18 U.S.C. § 2703(d), federal pen register statute, 18 U.S.C. § 3122, and Texas pen register statute, Tex. Code Crim. Proc. art. 18.21, §§ 2(b), 5(a), for, among other information, the Defendant's "precise and instant location" based on his phone's GPS location. [ROA.323, 326-27]. Those statutes permit issuance of orders on showings short of probable cause: "specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation," 18 U.S.C. § 2703(d); relevance, 18 U.S.C. § 3122(b)(2); and materiality, Tex. Code Crim. Proc. art. 18.21, § 2 (c)(3).

A state court judge granted the application, authorizing the government to direct Defendant's service provider to "remotely query the Target [cell phone's] enhanced-911 (E911) global positioning system (GPS)" for 60 days from the date

of the order. [ROA.335]. After the order was served on the service provider, Special Agents Hallett and Rodriguez learned that the phone number in question was no longer in use and therefore could not be tracked. [ROA.168, 207]. Special Agent Hallett obtained a new cell phone number for Defendant from the same confidential informant, and on May 8, 2015, Special Agent Rodriguez worked with a state prosecutor to file a new application for an order authorizing precise GPS tracking of the phone attached to that number. [ROA.337-46]. The May 8 application invoked the same statutory authorities as the earlier filing. [*Id.*]. A state court judge granted the application, again authorizing collection of real-time GPS data for 60 days from the date of the order. [ROA.350].

At the suppression hearing, Special Agents Hallett and Rodriguez explained that upon providing the order to the service provider (AT&T), the company "turned on" its GPS tracking of Defendant's phone. [ROA.185]. AT&T began "ping[ing]" the phone and sending its GPS coordinates to Special Agent Rodriguez via email at 15-minute intervals. [ROA.205-06]. This precision GPS tracking capability is a function of the E911 system that allows cell phones to be precisely located in an emergency.[4] [ROA.174]. It takes advantage of the same GPS technology that allows phone users to locate themselves on a map or to navigate using the phone. [ROA.205]. The GPS information obtained by AT&T and

---

[4] *See infra* Argument Part I.

emailed to Special Agent Rodriguez included the longitude and latitude of the phone, as well as an estimated accuracy of those coordinates. [ROA.172-73, 190-91, 205]. By entering the GPS coordinates into Google Maps, the Special Agents could see where the phone was located. [ROA.173, 265].

On May 11, 2015, GPS coordinates for Defendant's phone provided by AT&T led Special Agents Hallett and Rodriguez to Defendant's grandmother's house in Victoria, Texas. [ROA.170-71, 188-89]. Defendant was not there by the time they arrived, however. [ROA.189]. Special Agents Hallett and Rodriguez also visited Defendant's home after GPS coordinates led them to a second location in Victoria that turned out to be next door, but he was not at home either. [ROA.171, 189]. The next day, May 12, 2015, Special Agents Hallett and Rodriguez received GPS coordinates from AT&T that led them to a pond on private property near Victoria, where they found Defendant. [ROA.172-74, 265]. The email from AT&T with results of the relevant ping of Defendant's phone provided "specific longitude and latitude," as well as a notation indicating that those coordinates were accurate to within a six meter radius. [ROA.190-91]. A copy of AT&T's email to Special Agent Rodriguez containing the GPS data was introduced into evidence by the government at the suppression hearing. [ROA.190, 264]. *See* Fig. 1.

Fig. 1 [ROA.264]:



After the officers arrested him, Defendant was found to be in possession of a firearm and ammunition. [ROA.115-16]. He was subsequently charged in federal court with being a felon in possession of a firearm. [ROA.28-30].

## Argument

The panel's decision conceived of this as a case governed by the third-party doctrine, but it is not. This is not a case where the government obtained existing records from a company that the company was collecting in the ordinary course of business, and that had been voluntarily conveyed to it by its customer. *See, e.g.*,

*United States v. Miller*, 425 U.S. 435, 442 (1976). Indeed, contrary to the panel opinion's analysis, this case did not involve the government obtaining cell site location information at all. Instead, this is a case where the government compelled a private company to collect sensitive information on one of its customers that the company was not otherwise collecting—precise GPS coordinates—and transmit it to the government in real time. The panel misconstrued how the government went about tracking the location of Defendant's phone and, in apparent consequence, misapplied Circuit precedent to conclude that the government did not effect a Fourth Amendment search. The panel's decision conflicts both with cases implementing the third-party doctrine, and with cases explaining when private parties are deemed agents of the government for Fourth Amendment purposes. It also runs afoul of cases holding that technological searches that reveal information about presence or activity within a home require a warrant, and that real-time cell phone location tracking requires a warrant irrespective of whether it reveals presence in a constitutionally protected space. Because the panel's opinion conflicts with Fifth Circuit and Supreme Court precedent and raises questions of exceptional importance, the Court should grant rehearing.

## I.  The Panel's Decision Misapplies the Third-Party Doctrine, in Conflict with Fifth Circuit and Supreme Court Precedent.

The panel purported to root its conclusion that no warrant is required for real-time cell phone location tracking in the third-party doctrine, reasoning that

8

"when a third party collects information in the first instance for its own purposes, the information constitutes a business record" that the government may access without a warrant. Op.8 (quotation marks and citation omitted). In doing so, the panel relied on this Court's decision in *In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013), which held that no warrant is required for government access to historical CSLI. However, because this case does not involve the kind of cell phone location records that are kept in the course of normal business, the decision conflicts with the plain terms of *In re Application* and with cases addressing when a private party is acting as an agent of the government under the Fourth Amendment.

*In re Application* involved historical CSLI, which is a record of "the antenna tower and sector to which the cell phone sends its signal" "when the phone . . . [seeks] to obtain service for a call." *Id.* at 602 & n.1. Because the service provider records and retains this information in the normal course of business, this Court concluded that the government can later obtain it from the company without a warrant. *Id.* at 610. The Court drew a line, however, "based on whether it is the Government collecting the information or requiring a third party to collect and store it, or whether it is a third party, of its own accord and for its own purposes, recording the information." *Id.* Only because "[t]he Government does not require

service providers to record [historical CSLI] or store it" may the government

obtain it without a warrant. *Id.* at 612.

This case does not involve CSLI. Instead of requesting information about the

cell tower that Defendant's phone was communicating with in the normal course of

its interaction with the AT&T network, the government requested that AT&T send

silent "pings" to Defendant's phone, which forced the phone to calculate its GPS

coordinates and then transmit those coordinates back to AT&T, which AT&T then

sent to the government. [ROA.172-74, 185, 190-91, 206-07]. This is

quintessentially a case of the government "requiring a third party to collect"

information. *In re Application*, 724 F.3d at 610. Indeed, in this case, both the

service provider's *capability to collect* precise GPS coordinates, and its *actual*

*collection* of that data, was mandated by the government.

The ability of cellular service providers to precisely locate cell phones upon

law enforcement request is a result of federal regulatory requirements, adopted in

1996 and implemented by 2001, requiring service providers to have "the capability

to identify the latitude and longitude of a mobile unit making a 911 call."[5] This is

known as the Enhanced 911, or E911, requirement. Most service providers,

including AT&T, comply with the E911 requirement by being able to remotely

---

[5] Report and Order and Further Notice of Proposed Rulemaking, *In re Revision of the Comm'n's Rules to Ensure Compatibility with Enhanced 911 Emergency Calling Sys.*, 11 F.C.C. Rcd. 18676, 18712 (1996).

enable the GPS chip on a phone and force the phone to transmit its coordinates to the company upon request.[6] Although this capability was developed initially to assist in responding to 911 calls, service providers now provide the same location information to law enforcement pursuant to investigative requests, which is what happened in this case. [ROA.174]; *see also In re Application of the U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 532 (D. Md. 2011).

"Cellular service providers typically do not maintain records of the GPS coordinates of cellular telephones operating on their network." *In re Application*, 849 F. Supp. 2d at 534. Thus, only when AT&T received a court order compelling it to provide Defendant's location information to the government did it "turn[] on" its GPS tracking capability. [ROA.185].

Because the collection of Defendant's location information was compelled by the government, the information was not "voluntarily conveyed" to the company as required by the Supreme Court's third-party doctrine cases. *Miller*, 425 U.S. at 442. For the same reason, the panel's decision conflicts with cases explaining that "[a]lthough the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the

---

[6] Third Further Notice of Proposed Rulemaking, *In re Wireless E911 Location Accuracy Requirements*, 29 FCC Rcd. 2374, ¶ 105 n.212 (2014), https://apps.fcc.gov/edocs_public/attachmatch/FCC-14-13A1.pdf.

Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989). Under this Circuit's case law, a private party functions as an agent of the government even when the government does not compel the collection of information, but where the government merely "knew or acquiesced in the intrusive conduct" and "the private party intended to assist law enforcement efforts [rather than] further [its] own ends." *United States v. Grimes*, 244 F.3d 375, 383 (5th Cir. 2001) (citing *United States v. Paige*, 136 F.3d 1012, 1018 (5th Cir. 1998)). By compelling AT&T to obtain the GPS coordinates of Defendant's cell phone, the government effected a search.

In *In re Application*, this Court wisely declined to "address situations where the Government . . . hijacks the phone's GPS, with or without the service provider's help." 724 F.3d at 615. Such hijacking is at issue here. The panel decision's legal and factual errors create a conflict with binding precedent by concluding that no Fourth Amendment search occurred.

II.     **The Panel's Conclusion that Real-Time Cell Phone Location Tracking Does Not Require a Warrant Conflicts with Supreme Court Precedent.**

The Supreme Court has made clear that location tracking that reveals otherwise undiscoverable facts about constitutionally protected spaces implicates the Fourth Amendment. In *United States v. Karo*, 468 U.S. 705 (1984), the Court

held that location tracking implicates Fourth Amendment privacy interests because it may reveal information about individuals in areas where they have reasonable expectations of privacy. The Court explained that using an electronic device— there, a beeper—to infer facts about "location[s] not open to visual surveillance," like whether "a particular article is actually located at a particular time in the private residence," or to later confirm that the article remains on the premises, was just as unreasonable as physically searching the location without a warrant. *Id.* at 714-15. Such location tracking, the Court ruled, "falls within the ambit of the Fourth Amendment when it reveals information that could not have been obtained through visual surveillance." *Id.* at 707. In *Kyllo v. United States*, 533 U.S. 27 (2001), the Court similarly held that "obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area constitutes a search—at least where (as here) the technology in question is not in general public use." *Id.* at 34 (quotation marks and citation omitted).

Here, law enforcement agents twice obtained GPS coordinates that led them to constitutionally protected spaces: Defendant's grandmother's home, and Defendant's own home. [ROA.170-71, 188-89]. Although Defendant was no longer at those locations by the time police arrived, the tracking raises precisely the

13

concerns at issue in *Karo* and *Kyllo*. Failing to require a warrant for this tracking violates clear Supreme Court precedent.

Moreover, even if the facts in this case were as the panel represented them—collection of CSLI (rather than GPS pinging), with no noteworthy impact on privacy in constitutionally protected spaces—the panel's decision would still conflict with the holding of the Florida Supreme Court in *Tracey v. State*, 152 So. 3d 504 (Fla. 2014). There, the court rejected application of the third-party doctrine to real-time cell phone tracking, and held that even relatively short-term collection of real-time CSLI is a search under the Fourth Amendment for which a warrant is required. *Id.* at 522-23, 526.

As five Justices recognized in *United States v. Jones*, 565 U.S. 400, 416 (2012) (Sotomayor, J.); *id.* at 428-30 (Alito, J.), GPS tracking by law enforcement raises grave privacy concerns under the Fourth Amendment. Such conduct by police is not a rare event; law enforcement agencies request real-time cell phone location information from service providers tens of thousands of times each year.[7] Without bringing this case in line with Circuit and Supreme Court precedent, residents of this Circuit will be left unprotected against the ever-increasing

---

[7] AT&T alone received nearly 16,000 requests for real-time cell phone location data in 2016. AT&T, Transparency Report 4 (Feb. 2017), http://about.att.com/content/dam/csr/Transparency%20Reports/Feb-2017-Transparency-Report.pdf.

capabilities of the government to surreptitiously track and locate them upon the barest suspicion of wrongdoing.

### III.   The Panel Erred in Holding that the Good-Faith Exception to the Exclusionary Rule Applies.

The panel erred in holding that "even if accessing prospective cell site data did constitute a Fourth Amendment search, DPS's actions are excused by the good-faith exception to the exclusionary rule." Op.9. Contrary to the panel's conclusion, the government's reliance on the Stored Communications Act ("SCA") to obtain the GPS information at issue here was not objectively reasonable under *Illinois v. Krull*, 480 U.S. 340 (1987), because the vast majority of judges to address the question have concluded that the statute cannot be used for real-time cell phone location tracking.

As the Supreme Court has made clear, the primary purpose of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Id.* at 347 (quotation marks omitted). To that end, the Supreme Court has held that suppression of evidence would not have a deterrent effect on officers if they have relied in "objective good faith" on an outside authority, such as a facially constitutional statute. *Id.* at 349. However, where an officer cannot be said to have relied on judicial or statutory authority in an objectively reasonable manner in conducting a search, courts apply the exclusionary rule.

Here, the government's reliance on the SCA to obtain real-time GPS information was not objectively reasonable because it flew in the face of the view of the vast majority of courts to consider the issue, which have concluded that the SCA does not permit the government to obtain prospective cell site location data pursuant to an order under § 2703(d), and that a search warrant is required instead.[8] Indeed, as of the date of the tracking in this case, law enforcement agencies in Texas had been on notice for a decade that the SCA does not authorize real-time tracking. *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747 (S.D. Tex. 2005).[9] Because law enforcement in this case was on notice that the SCA, by its plain terms, cannot be used to obtain real-time cell phone location information, reliance on the statute was

---

[8] *See, e.g.*, *United States v. Myles*, No. 5:15-CR-172-F-2, 2016 WL 1695076, at *7 (E.D.N.C. Apr. 26, 2016) ("With respect to 'real-time' location data, . . . the majority of federal courts that have considered the issue have concluded such information may only be obtained pursuant to a warrant supported by probable cause."); *United States v. Espudo*, 954 F. Supp. 2d 1029, 1035 (S.D. Cal. 2013) (collecting cases). By the count of undersigned counsel, as of 2015 nearly two dozen federal magistrate and district court judges had held that the SCA does not provide for obtaining real-time cell phone location data without a warrant.

[9] Moreover, Texas state courts have made clear that the government's reliance on the SCA to obtain real-time location information would not be based on any state judicial authority, and have suggested that a warrant might be required. *See, e.g.*, *Ford v. State*, 477 S.W.3d 321, 334 (Tex. Crim. App. 2015) ("Fourth Amendment concerns might be raised . . . if real-time location information were used to track the present movements of individuals in private locations, [or] if the data involved came from a GPS rather than cell-phone towers."); *see also, e.g.*, *State v. Harrison*, No. 02-13-00255-CR, 2014 WL 2466369 (Tex. App.—Fort Worth, May 30, 2014).

not reasonable. The "remedial purpose [of the exclusionary rule] is effectively advanced," *Krull*, 480 U.S. at 347, by suppression of the GPS evidence obtained by the government without a warrant.

## Conclusion

"The Supreme Court has noted the need to take account of rapidly evolving capabilities when applying the Fourth Amendment to other Information Age technologies." *United States v. Turner*, 839 F.3d 429, 436 (5th Cir. 2016) (citing *Kyllo*, 533 U.S. at 33-34). Here, the panel inaccurately described the technology at issue, and it crafted a rule that both conflicts with Circuit and Supreme Court precedent and endangers the privacy rights of individuals within the Fifth Circuit. For the foregoing reasons, Defendant respectfully urges the Court to grant rehearing. Should this Court grant rehearing and reverse the district court's denial of the suppression motion, the Court should also address Defendant's "request for remand for resentencing regarding his aiding and abetting conviction," which the panel dismissed as moot in light of its holding on the suppression challenge. Op.10. Finally, if the Court concludes that it was appropriate for the panel to apply the third-party doctrine, the Court should withdraw the panel's opinion and hold the case in abeyance pending decision by the Supreme Court in *Carpenter v. United States*, which will address whether the third-party doctrine applies to cell site location information. *See supra* pages v-vi.

17

June 7, 2017

Respectfully submitted,

/s/ Micah W. Hatley

Micah W. Hatley
The Hatley Law Firm
P.O. Box 2113
302 W. Forrest Street
Victoria, TX 77902
Phone: (361) 489-3481
Fax: (361) 597-3167
mwhatley.hatleylawfirm@gmail.com

/s/ Nathan Freed Wessler

Nathan Freed Wessler
Brett Max Kaufman
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
nwessler@aclu.org

/s/ Kali Cohn

Kali Cohn
American Civil Liberties Union
    Foundation of Texas
6440 N. Central Expressway
Dallas, TX 75206
Phone: (214) 346-6577
Fax: (713) 942-8966

**Certificate of Service**

I hereby certify that on this Seventh day of June, 2017, the foregoing

Petition for Rehearing was filed electronically through the Court's CM/ECF

system. Notice of this filing will be sent by e-mail to all parties by operation of the

Court's electronic filing system.

/s/ Nathan Freed Wessler
Nathan Freed Wessler

## Certificate of Compliance

1. This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because the brief contains 3,879 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2. This petition complies with the typeface and type style requirements of Fed. R. App. 32(a)(5)-(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 word processing software in Times New Roman typeface, 14-point.

3. This petition complies with the privacy-redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4. To counsel's knowledge this petition is free of viruses because it has been scanned for viruses with the most recent version of Symantec Endpoint Protection.

5. Pursuant to Fifth Circuit Rule 25.2.1, any paper copies later sent to the Clerk of Court upon request will be exact copies of the electronic submissions unless otherwise directed by the Clerk of Court.

/s/ Nathan Freed Wessler
Nathan Freed Wessler

**APPENDIX: Panel Opinion**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-40701

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2017

Lyle W. Cayce
Clerk

Consolidated with: 16-40702

UNITED STATES OF AMERICA,

        Plaintiff - Appellee

v.

WILLIAM CHANCE WALLACE,

        Defendant - Appellant

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before JONES, CLEMENT, and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

    William Chance Wallace is a confirmed member of Tango Blast, a Texas crime syndicate. As of 2015, Wallace had been convicted of five violent felonies: one count of possession of a controlled substance with intent to distribute, two counts of aggravated assault with a deadly weapon, one count of possession of a controlled substance, and one count of unlawful delivery of a controlled substance. Wallace violated his probation for the unlawful delivery charge and a warrant was issued for his arrest on January 15, 2015. In two separate cases, Wallace was charged with and pleaded guilty to: (1) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); and

(2) aiding and abetting retaliation against a witness in a criminal investigation, in violation of 18 U.S.C. § 1512(b) and 18 U.S.C. § 2. In this consolidated appeal, we are called on to decide whether the district court erred in denying Wallace's motion to suppress. Because we conclude that it did not, we AFFIRM in part and DISMISS in part as MOOT. In doing so, we expressly overrule a line of cases coming out of the Southern District of Texas. *In re Order Authorizing Prospective and Continuous Release of Cell Site Location*, 31 F. Supp. 3d 889, 891-900 (S.D. Tex. 2014); In *re App. for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 756-65 (S.D. Tex. 2005).

## I.

### A. Firearm Case

In May 2015, a confidential informant approached Shawn Hallett, a Special Agent with the Texas Department of Safety ("DPS"). The informant gave Wallace's phone number to Hallett and informed him that Wallace was a gang member and a wanted fugitive living in Austin. When Hallett verified this information, he discovered an outstanding arrest warrant. He then passed this information to DPS's gang unit in Austin.

DPS Agent Jose Rodriguez (with the help of an assistant district attorney) then sought a Ping Order for authorization under both federal and state law to (among other things) obtain the "locations of cell site towers being accessed by" the cellular device linked to the number given by the confidential informant. This information is referred to as "E911" or prospective cell site data. A state district court judge granted the requested Ping Order for a period of sixty days going forward. As a result, DPS discovered that Wallace's phone had been turned off.

Hallett reached out to his confidential informant and received a new telephone number for Wallace within a few days. Rodriguez then applied for

and was granted a second Ping Order for this new cell phone number. With this Ping Order, DPS obtained the approximate, real-time GPS location of Wallace's cell phone from AT&T. Using this information, Hallett located Wallace near a pond on private property off U.S. Highway 87 north of Victoria, Texas. Officers arrested Wallace, discovering a Winchester Super X .22 magnum caliber round of ammunition in his pocket, a black Bersa Thunder .380 semi-automatic pistol at the edge of the pond, and a box of ammunition for that pistol along with an empty holster in Wallace's truck. Wallace was charged with being a felon in possession of a firearm.

Once charged, Wallace moved to suppress the evidence obtained during the execution of the arrest warrant, including the pistol, ammunition, and relevant testimony. He argued that the Ping Order used to locate him was invalid because "1) the information provided to the State District Judge was ambiguous, overbroad and conclusory and 2) law enforcement was not engaged in an 'ongoing criminal investigation' of the Defendant." He also argued that the statutes authorizing the Ping Order were unconstitutional. The district court denied Wallace's motion, finding that suppression was not a cognizable statutory remedy under Fifth Circuit precedent. The district court also upheld the statutes as constitutional. Wallace timely appealed.[1]

## B. Aiding and Abetting Charge

Approximately five months after Wallace was indicted for the firearms charge, Wallace and two accomplices posted a photograph of the firearms complaint and revealed the individual they believed to be the "snitch." As a result, that individual, who may or may not have been the actual confidential informant, was threatened. Wallace was charged with and pleaded guilty to

---

[1] Wallace's plea agreement preserved his right to appeal the district court's suppression ruling.

Nos. 16-40701 & 16-40702

aiding and abetting retaliation against a witness in a federal investigation, a violation of 18 U.S.C. § 1513(b) and 18 U.S.C. § 2. Pursuant to his plea agreement, Wallace waived his right to appeal his conviction and sentence for any reason other than ineffective assistance of counsel.

## C. Sentencing

The cases were consolidated for sentencing. The district court sentenced Wallace to two concurrent 180-month sentences, followed by three years of supervised release. At the sentencing hearing, Wallace's attorney noted that the Guidelines range for the aiding and abetting charge would have been much lower had Wallace not been classified an armed career criminal, a threshold he would not have reached if he not been convicted on the firearms charge. Wallace therefore requested—and the district court agreed—to reconsider his sentence should the firearms conviction be overturned on appeal.

## II.

"When examining a district court's ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error." *United States v. Turner*, 839 F.3d 429, 432 (5th Cir. 2016) (quoting *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009)). The evidence is viewed "in the light most favorable to the prevailing party." *Id.* We may "affirm the district court's ruling on a motion to suppress based on any rationale supported by the record." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

The party seeking suppression "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 131 n.1, 133-34 (1978)).

## III.

Wallace maintains that the district court erred in denying his motion to suppress because "[t]he Government failed to show that it sought an order to find information relevant to an *ongoing criminal investigation*" as required by the federal pen-trap statute and the Texas Code of Criminal Procedure. Wallace concedes that the Ping Order was issued pursuant to a valid arrest warrant for violating the conditions of his probation, but he argues that the plain meaning of the phrase "ongoing criminal investigation" implies "new criminal activity" and does not encompass "technical violations of . . . probation" or "conduct other than new crime." Neither the relevant statutes nor binding precedent define the term "ongoing criminal investigation."

But Wallace's ultimate problem is that suppression is not a remedy for a violation of either the federal pen-trap statute or the Texas Code of Criminal Procedure. *United States v. German*, 486 F.3d 849, 654 (5th Cir. 2007) (holding that suppression is not a remedy for a violation of the federal pen-trap statute); *see also United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014).[2] "Where Congress has both established a right and provided exclusive remedies for its violation, we would encroach upon the prerogatives of Congress were we to authorize a remedy not provided for by the statute." *German*, 486 F.3d at 853 (alteration omitted) (quoting *United States v. Frazin*, 780 F.2d 1461, 1466 (9th Cir. 1986)). Unlike the wire-tap statute which "specifically provides for an exclusionary remedy when the statutory requirements are not met," the pen-

---

[2] DPS also sought the Ping Order pursuant to § 2703(d) of the federal Stored Communications Act (SCA). Like the federal pen-trap statute and the parallel state provision, the SCA requires the government to show that the "information sought, [is] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Wallace does not argue that the government failed to comply with the requirements of the SCA. Even if he did, we have held that suppression is not a remedy for violations of the SCA. *Guerrero*, 768 F.3d at 358.

trap statute provides only for fines and imprisonment for knowing violations. *Id*. at 842. Accordingly, it is clear that "Congress has determined that the benefits of an exclusionary rule do not outweigh its substantial social costs." *Id.*

The same is true with respect to the parallel state statute in Article 18.21 of the Texas Code of Criminal Procedure. It specifically states that the "remedies and sanctions described" therein—namely "injunctive relief," "a reasonable attorney's fee and other litigation costs," and "actual damages"— "are the exclusive judicial remedies and sanctions for a violation of this article." Tex. Code. Crim. Proc. art. 18.21, §§ 12-13. Suppression is not an available recourse. As such, even if the Ping Order were issued in violation of federal or state law, Wallace is not entitled to suppression. The district court did not err.

## IV.

Alternatively, Wallace argues that the district court should have granted his motion to suppress because the government violated his Fourth Amendment rights when it accessed his phone's E911 location information— or prospective cell site data—pursuant to a court order supported by "specific and articulable facts" rather than a warrant supported by probable cause. Ordinarily, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure. This prohibition applies as well to the fruits of the illegally seized evidence." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (internal citations omitted). "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring)). Whether obtaining prospective cell site data constitutes a search within the meaning of the Fourth Amendment is still an open question in this Circuit.

Nos. 16-40701 & 16-40702

The Sixth Circuit—the only appellate court to address the subject so far—held that obtaining prospective cell site data is not a search. *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012). The Sixth Circuit reasoned that when an individual "voluntarily use[s]" a cellular device, he has no "reasonable expectation of privacy in the GPS data and location of his cell phone." *Id.* at 781. "When criminals use modern technological devices to carry out criminal acts and to reduce the possibility of detection, they can hardly complain when the police take advantage of the inherent characteristics of those very devices to catch them." *Id.* at 774. A number of district courts have reached a similar conclusion. *See, e.g.*, *United States v. Booker*, No. 1:11-CR-255-1-TWT, 2013 WL 2903562, at *4 (N.D. Ga. June 13, 2013). Other courts have disagreed. *See, e.g., In re U.S. for an Order Authorizing the Release of Prospective Cell Site Info.*, 407 F. Supp. 2d 134, 135 (D.D.C. 2006).

We have already grappled with the constitutionality of judicial orders based on less than probable cause authorizing government access to *historical* cell site data. *In re U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013) (hereinafter *Historical Cell Site Data*). In *Historical Cell Site Data*, the government filed three applications under § 2703(d) of the SCA requesting a court order to compel a cell phone service provider "to produce sixty days of historical cell site data" for certain cell phone numbers, revealing "the antenna tower and sector to which the cell phone sends its signal." *Id.* at 602. The magistrate judge denied each of the government's applications and held that "warrantless disclosure of cell site data violates the Fourth Amendment." *In re U.S. for Historical Cell Site Data*, 747 F. Supp. 2d 827, 846 (2013).

We reversed, concluding that the "question of *who* is recording an individual's information initially is key." *Historical Cell Site Data*, 724 F.3d at 610. "[W]hether an intrusion constitutes a search" depends "on whether it is the Government collecting the information or requiring a third party to collect

and store it, or whether it is a third party, of its own accord and for its own purposes recording the information." *Id.* When a "third party collects information in the first instance for its own purposes," the information constitutes a business record. *Id.* Applying this framework, we concluded that:

> cell site information is clearly a business record. The cell service provider collects and stores historical cell site data for its own business purposes, perhaps to monitor or optimize service on its network or to accurately bill its customers for the segments of its network that they use. The Government does not require service providers to record this information or store it. The providers control what they record and how long these records are retained . . . . [T]he Government merely comes in after the fact and asks a provider to turn over records the provider has already created.

*Id.* at 611-12.

There is little distinction between historical and prospective cell site data. As in *Historical Cell Site Data*, here the government sought "the disclosure of the locations of cell site towers being accessed by [Wallace's] cell phone" as recorded in future records "captured, stored, recorded and maintained by the phone companies in the ordinary course of business." "While this information is 'prospective' in the sense that the records had not yet been created at the time the order was authorized, it is no different in substance from the historical cell site information . . . at the time it is transmitted to the government." *Booker*, 2013 WL 2903562, at *7. The information the government requested was, "in fact, a stored, historical record because it [was] received by the cell phone service provider and stored, if only momentarily, before being forwarded to law enforcement officials." *In re U.S. for an Order for Prospective Cell Site Location Info. on a Certain Cellular Tel.*, 460 F. Supp. 2d 448, 459 (S.D.N.Y. 2006). We therefore conclude that like historical cell site information, prospective cell site data falls outside the purview of the Fourth Amendment. As such, "the SCA's authorization of § 2703(d) orders for [prospective] cell site information if an application meets the lesser 'specific

and articulable facts' standard, rather than the Fourth Amendment probable cause standard, is not per se unconstitutional." *Historical Cell Site Data*, 724 F.3d at 615.

That said, even if accessing prospective cell site data did constitute a Fourth Amendment search, DPS's actions are covered by the good-faith exception to the exclusionary rule. "[T]he exclusionary rule is a judicially fashioned remedy whose focus is not on restoring the victim to his rightful position but on deterring police officers from knowingly violating the Constitution." *United States v. Allen*, 625 F.3d 830, 836 (5th Cir. 2010). As such, courts have carved out exceptions for police conduct "pursued in complete good faith" because the rule's "deterrence rationale loses much of its force" in such circumstances. *United States v. Leon*, 468 U.S. 897, 919 (1984) (quoting *Michigan v. Tucker*, 417 U.S. 433, 447 (1974)). In particular, the Supreme Court has held that the exclusionary rule does not apply when police officers "act[ed] in objectively reasonable reliance upon a *statute*" even if "the statute is ultimately found to violate the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 342 (1987).

The plain language of 18 U.S.C. § 2703(c) states that the government may obtain "a court order" requiring a cellular telephone company to turn over "record[s] or other information" related to its "customer[s]." Nothing in the text of the statute suggests that "other information" does not encompass prospective cell site data. Given the "strong presumption of constitutionality due to an Act of Congress," *United States v. Watson*, 423 U.S. 411, 416 (1976), and the absence of a "clear, controlling case explicitly stating that the government may not obtain real-time cell site location data under the SCA," *United States v. Espudo,* 954 F. Supp. 2d 1029, 1044 (S.D. Cal. 2013), it was reasonable for the officers to rely on the text of the statute. We cannot conclude that DPS officers "had knowledge, or [could] properly be charged with

knowledge, that the search was unconstitutional under the Fourth Amendment." *Leon*, 468 U.S. at 919. As such, the district court did not err by denying Wallace's motion to suppress.

## V.

In conclusion, we AFFIRM the district court's denial of Wallace's motion to suppress the evidence supporting his conviction in the firearms case. Having concluded that suppression is not warranted, we need not address Wallace's request for remand for resentencing regarding his aiding and abetting conviction, but instead DISMISS that aspect of his appeal as MOOT.